37 So.3d 50 (2009)
Wade SHORT, Appellant,
v.
WILSON MEAT HOUSE, LLC and Bridgefield Casualty Insurance Company, Appellees.
No. 2008-WC-01224-COA.
Court of Appeals of Mississippi.
June 16, 2009.
Rehearing Denied October 13, 2009.
*53 John Hunter Stevens, Jackson, Attorney for Appellant.
Peter L. Corson, Ridgeland, Attorney for Appellees.
EN BANC.
ROBERTS, J., for the Court.
¶ 1. Wade Short appeals the denial of workers' compensation benefits for his injuries resulting from an incident at work. The administrative law judge determined that Short failed to meet his burden of proving that he suffered an injury related to his employment. The decision of the administrative law judge was adopted by the Mississippi Workers' Compensation Commission, and the Commission's order was affirmed by the Circuit Court of Copiah County. On appeal, Short claims that the Commission's decision was not supported by substantial evidence and should be reversed. A complete review of the record reveals sufficient evidence to establish a causal connection between Short's physical condition and his work-related injury at Wilson Meat House (Wilson), rendering his injury compensable. Therefore, we reverse the judgment of the circuit court, which affirmed the Commission's decision, and remand the case to the Commission for a determination of the extent, if any, Short has suffered a loss of wage-earning capacity due to the injury.

FACTS AND PROCEDURAL HISTORY
¶ 2. Short, who reached the eleventh grade in high school but barely can read, has been an employee of Wilson, a slaughterhouse and meat processing facility located in Crystal Springs, Mississippi, for approximately twenty-eight years. Short performed a variety of duties at Wilson. These included working in the cut shop; cutting and wrapping meat; and mixing, seasoning, and weighing meat products. When possible, Short substituted for regular employees on the "kill floor" in the slaughterhouse slaughtering hogs and cattle. Short's average weekly wage was $460.02. However, Short received an hourly rate plus an additional amount per head when he substituted on the "kill floor."
¶ 3. Short's workers' compensation claim arose after he assisted co-workers in transporting a large homemade cedar desk to the second floor of Wilson. The desk was moved on or about December 1, 2005, and testimony indicates that the desk weighed between 150 and 200 pounds. Although Short's co-workers agreed that Short helped move the desk, they have suffered memory loss concerning the extent of his involvement. However, no one contradicts that Short was involved in moving the desk, in some capacity.
¶ 4. Short testified that while moving the desk, he felt something "pop" in his neck and that he told this to Mike Welch his supervisor, at the time. Short testified that after moving the desk, he suffered severe radiating neck pain and numbness which he attributed to the lifting incident at work. Within days of moving the desk, Short sought medical treatment at the emergency room of University Hospital and Clinic in Jackson, Mississippi, complaining of radiating pain and numbness. Short's emergency room visit was on December 12, 2005. Short was referred to a *54 neurosurgery clinic and released to return to work with limiting instructions. He was to refrain from lifting anything heavier than five pounds. This limitation was to be followed until he was "cleared by neurosurgery." However, all parties agree that Short continued in his normal work routine, which included lifting items that exceeded the five-pound limitation.
¶ 5. Thereafter, Short was diagnosed with cervical spondylotic myeloradiculopathy,[1] and an MRI indicated that he had disc herniation centrally at C5-6 and C6-7. On August 9, 2006, after treatment and physical therapy failed to alleviate his pain and numbness, Short underwent elective surgery to correct his condition.
¶ 6. Short filed a petition to controvert with the Commission on August 30, 2006, and on November 7, 2006, he filed a motion to compel payment of temporary total disability benefits and medical treatment. A hearing was held before an administrative law judge (ALJ) on January 12, 2007. The ALJ ruled that, although Short undoubtedly had a cervical injury, he failed to prove that he was injured at work. Thereafter, Short made a motion to the Commission to supplement the record with a letter from his physician, which supported Short's claim that his condition was causally connected to the incident at work. However, on August 30, 2007, the Commission denied Short's motion and affirmed the ALJ's ruling. Short then appealed to the Circuit Court of Copiah County, and on June 30, 2008, the circuit court affirmed the Commission's decision. Aggrieved by the circuit court's judgment, Short now appeals.

STANDARD OF REVIEW
¶ 7. This Court's standard of review in workers' compensations case is well settled:
The Mississippi Worker's Compensation Commission is the ultimate fact-finder. Accordingly, the Commission may accept or reject an administrative judge's findings. This Court will affirm the Commission's findings of fact if they are supported by substantial evidence. In other words, this Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Doubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law.
Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment. As with any fact-finder, the Commission is entitled to rely upon the evidence and reasonable inferences.
Frito-Lay, Inc. v. Leatherwood, 908 So.2d 175, 179 (¶¶ 20-21) (Miss.Ct.App.2005) (internal citations and quotations omitted).

ANALYSIS
¶ 8. "In a workers' compensation case, the claimant bears the burden of proving by a fair preponderance of the evidence each element of the claim. These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability." *55 Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990) (internal citations and quotations omitted).
¶ 9. In determining whether benefits should have been awarded, this Court must consider, "on an ad hoc basis, whether the three elements of a worker's compensation claim were proved by a fair preponderance." Id. And, "[d]oubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes" of statutory law. Id.
¶ 10. In this matter, the parties bring several issues before this Court for consideration. However, we find that the essence of the claim can be condensed to two issues. First, whether the Commission erred when it found that Short's injury was not work related. And, second, whether the Commission erred in not allowing Short to submit additional medical evidence thereby ignoring the construction and intent of the Mississippi Workers' Compensation Act. We address each in turn.

I. WHETHER THE COMMISSION ERRED WHEN IT FOUND THAT SHORT'S INJURY WAS NOT WORK RELATED.
¶ 11. It is indisputable that Short bore the burden of proving that his neck injuries were the result of an injury arising out of and in the course of employment, and that a causal connection existed between such injury and his claimed disability. See Miss.Code. Ann. §§ 71-3-3-7. (Rev.2000). As well, it is certain, the Commission is the ultimate fact-finder in these matters. See Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985). In this case, the ALJ determined that Short had failed to establish a causal connection between his neck injury and the incident at work because Short's co-workers "recalled the incident differently." However, after a thorough review of the record and relevant case law, we disagree with the ALJ's ruling.
¶ 12. Not one co-worker definitively refuted Short's account of what happened; rather, they all stated that they simply could not remember whether Short lifted the desk or not. Short's supervisor, Welch, testified that he had built the large desk and had recruited Short and another co-worker, Willie Keyes, to deliver the desk to the second floor of Wilson's on December 1, 2005. Welch testified that the desk had to be lifted up sideways and lifted over a table to get it into an elevator, and that Short's involvement consisted of carrying the drawers from the desk upstairs. Welch testified that Short would not have lifted or carried the desk because the area that had to be traversed was too narrow for three people. The dissent correctly notes Welch's testimony about Short carrying the drawers during the incident, but that is merely one portion of Welch's testimony.
¶ 13. When specifically questioned by counsel if he remembered Short carrying the desk at any time, Welch testified that "[he] really couldn't say. You know, [Short] might have helped it over the table but I really couldn't say.... you know." Shortly thereafter, in an attempt to clarify a question, the ALJ stated to Welch, "Okay. You can't recall whether [Short] did or didn't [carry or lift the desk at some point]. Is that what you're telling us?" Welch responded, "Yes, sir." Early in Welch's testimony, the ALJ asked if Short was present at the time the desk was initially taken off of the truck that delivered the desk, and Welch testified that Short was present at that time. When the ALJ asked Welch what Short was doing during the time they were taking the desk into the building, Welch testified that "we [were] all, you know, standing there trying *56 to get the desk in.... We [were] all on break so that's when we [were] doing that. So I don't know...." When responding to a later question posed by the ALJ whether he kept up with what Short was doing during all of this period, Welch responded, "[n]o sir." Welch testified at least seven times that he "reckoned" or "assumed" events related to Short's involvement or that he simply could not remember what Short was doing. Although, Welch distinctly testified that Short was present during the entire episode and that Short lifted and carried the desk drawers, he presented no definitive testimony that Short did not at some point, during the transportation of the desk, lift or carry the desk. Short testified that he helped to carry the desk twice, and after he told Welch that he felt something "pop" in his neck, Keyes helped carry the desk upstairs. The dissent notes Welch's lack of memory that Short told Welch that he felt something "pop" in his neck. That is correct. Welch testified that he did not recall if Short indicated that he had hurt himself after getting the desk upstairs. He also testified that he did not have any knowledge that Short ever indicated that he hurt his neck as a result of lifting the desk. Also, he did not recall if Short had ever presented a doctor's excuse to take him off of work because of a work-related injury. However, when asked if he had heard that Short hurt his neck at work, he stated, "[y]ou know, I can't tell you who and I don't know exactly if they were joking or what, you know." The ALJ then attempted to clarify Welch's statement, and he asked Welch if he was saying that somebody might have told him that Short injured his neck at work. Welch answered, "[y]es sir." Welch's testimony does not disprove Short's version of his involvement; it merely proves that there is much that he does not remember. In any event, it is undisputed that in some capacity, Short was involved with the transportation of the desk and its parts. "Doubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law." Leatherwood, 908 So.2d at 179(¶ 20).
¶ 14. The dissent notes that Keyes testified that Short carried drawers. That is correct, but Keyes's testimony was much the same as Welch's testimony. Keyes testified that he did not remember whether Short had helped lift the desk at any time. Also, Keyes testified that he could not even remember if Short had entered the elevator with them while they were moving the desk. After Keyes testified that Short lifted the drawers, the following colloquy took place between Short's counsel and Keyes:
Q. Now, you testified earlier that y'all had to carry [the desk] through and twist it up getting it through a door and lift over these counters or tables.
A. Yes, sir.
Q. You're saying you don't remember him ever helping with the desk part, but you're not saying it didn't happen.
A. What I remember is when we brought the desk in, there wasn't enough room for two people to come through with the desk.[2]
Q. I'm not talking about helping the whole time. If Mr. Welch testified that it's possible he could have *57 helped y'all get the thing up over the table, you wouldn't disagree with that if he said that was possible. You just don't remember.
A. No, sir. I don't remember.
In the same vein, Keyes went on to testify that he could not remember whether Short had put the drawers down at any point. Neither co-worker distinctly remembered whether Short had helped lift the desk or not.
¶ 15. Jimmy Jones, a meat inspector for the Mississippi Department of Agriculture, was also present on the day in question. Jones corroborated Welch's and Keyes's testimonies that, while upstairs, Short was carrying drawers, and Short went back downstairs to get more drawers. However, Jones testified that he was not present downstairs when the desk was moved from the truck into the building, maneuvered over the table, through the narrow hallway, and into the elevator. Although Jones may have been able to speak about Short's involvement upstairs, he was unable to attest to or deny Short's account of what happened downstairs. Jones offers no contradiction to Short's statement of the events. In regard to carrying the drawers, Short testified as follows:
After I picked [the desk] up I felt something that popped in my neck up there. I said, Mr. Curly, I feel something that popped in my neck.
. . . .
And he told me, ... you ain't nothing but a wimp.... And that's when Mr. Bubba Keyes [came] and helped me and Curly to pick it on up and carry it up to the office. That's when Mike Welch told me to back up and start taking the drawers out of the desk, and carry it on up the stairs, me, him and Bubba Keyes.
Short did not claim to have carried or lifted the desk while he was upstairs, and Jones was not downstairs to prove or disprove Short's account of what happened downstairs.
¶ 16. As this Court recently stated, "[w]hen ... testimony is undisputed and not so unreasonable as to be unbelievable, taking into account the factual setting of the claim, the claimant's testimony generally ought to be accepted as true." Guy, 16 So.3d 29, 35 (¶ 25) (Miss.Ct.App. 2008). Fully realizing that the Commission is the fact-finder, after reading the hearing transcript and record thoroughly, we find that the record presents substantial evidence[3] to support the first two elements necessary to show that Short has a compensable claim. These are: there was an accidental injury, and that the injury arose out of and in the course of his employment.[4]
¶ 17. "Substantial evidence requires more than mere conjecture or possibility." Guy, 16 So.3d at 35 (¶ 24). Four persons' testimonies verified Short's involvement in moving the heavy desk, to some extent. Their testimonies provide *58 more than mere conjecture or possibility. Just because the witnesses cannot remember whether Short helped lift the desk over a table does not defeat Short's account of the events of that day. Furthermore, whether Short was lifting the desk, helping to support the desk, or carrying drawers does not negate Short's account that he experienced an injury while following his supervisor's instructions during the course and scope of his employment, which ultimately led to his surgery.
¶ 18. As stated above, medical records verify that Short visited the emergency room for treatment soon after the incident at work, and he reported to the triage nurse that his pain and numbness began after "lifting a heavy desk." Although the medical records do not contain a specific statement by a doctor that lifting the desk caused Short's injury, there is no statement or diagnosis by a physician, or other medical personnel, that contradicts Short's statement to the emergency room personnel about the cause of his pain. As this Court has held:
A claimant does not have to prove with absolute medical certainty that his work-related injuries were the cause of his disability. Even though the testimony may be somewhat ambiguous, as to causal connection, all that is necessary is that the medical findings support a causal connection. The medical evidence is sufficient if it supports, even if it does not fully prove, a finding of disability. The Mississippi Supreme Court has held that disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability.
Leatherwood, 908 So.2d at 180(¶ 24) (internal citations and quotations omitted).
¶ 19. Like the claimant's medical records in Leatherwood, Short's medical records show that no doctor ever excluded the lifting incident as an event that may have exacerbated Short's condition. Id. at 180-81(¶ 25). Furthermore, multiple medical records reflect that Short consistently gave the same statement about the incident at work and his injury. At no point did he state that he was injured at home or during some other activity. Although the admissibility of Short's medical records, other than the letter from his physician, is not in question, we find Mississippi Rule of Evidence 803(4) persuasive in the instant appeal. Rule 803(4) provides, in part, that:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.
M.R.E. 803(4). In other words, it is presumed that a person who is seeking medical treatment is telling the truth to the medical personnel. Short reported to the emergency room nurse and his physical therapist that he experienced pain and numbness after lifting a heavy desk at work. The medical records lend credence to the veracity of Short's testimony. Based upon a detailed reading of the entire record and a lack of direct contradiction, this Court finds that Short met his burden of proving by a preponderance of evidence that he experienced an injury *59 during the scope and course of his employment, and that the accident was causally connected to his claimed disability. The dissent states that we are choosing to focus on the evidence that supports Short's case, rather than on the evidence that supports the Commission's decision. We disagree. Although the dissent correctly notes that the Commission is the fact-finder in workers' compensation cases, and we are not to "re-weigh" the evidence, it is, however, incumbent upon this Court to consider the record in its entirety.
¶ 20. "The standard of review in workers' compensation cases has clearly been established in our prior holdings. The ... Commission sits as the `ultimate finder of facts' in deciding compensation cases, and therefore, its findings are subject to normal, deferential standards upon review." J.R. Logging v. Halford, 765 So.2d 580, 583 (¶¶ 12-13) (Miss.Ct.App.2000) (citation omitted). "We hold that judicial review of findings of the Commission extends to a determination of whether they are clearly erroneous.... a finding is clearly erroneous when, ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." Id. (emphasis added). Rather than focusing only on Short's evidence, we have carefully read the entire record and have not found any definitive testimony or statements by medical personnel that refutes Short's account of the events surrounding the transportation of the desk. A great deal of testimony was given by Short's co-workers, but at the end of the day, it was mostly speculation or lack of memory. The record clearly establishes that Short was involved, in some capacity, in the transportation of the desk. After a meticulous reading of the record, we are "left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." Id. (emphasis added). "Where the matter may be an even question, this Court has found and will likely continue to find in favor of the injured worker." Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990) (internal citations omitted). Having considered Short's involvement in moving the desk, we now consider whether a pre-existing condition or continuing to work after an injury prohibits an individual's right to compensation.
¶ 21. Even though Short may have had a preexisting degenerative disc condition, his injury may still be compensable. This Court has stated: "A pre-existing condition is not always a bar to recovery for a disability. Rather, if the employment aggravated, accelerated, or combined with the pre-existing condition to produce the disability, the disability arose out of the employment and the claimant is entitled to compensation for the disability." Harrell v. Time Warner/Capitol Cablevision, 856 So.2d 503, 506(¶ 7) (Miss.Ct.App.2003) (citation omitted) (emphasis added). Wilson attempted to establish Short's involvement, during his personal time, in cleaning out storage units and moving items such as washers and dryers. Also, Wilson's counsel elicited testimony relating to an incident with a horse where Short was supposedly dragged by the horse for several minutes. Apparently, this was an attempt to show that Short's injury did not arise from the incident at work, but rather, from Short's activities away from work. We find this testimony unpersuasive. Mere speculation about other activities fails to disprove Short's testimony and medical records, which establish a connection between his pain, numbness, and ultimate surgery, arising from the incident at work. Furthermore, the incident with the horse took *60 place months after Short visited the emergency room complaining that he suffered pain after moving a heavy desk at work.
¶ 22. There is much ado in the record about Short continuing to work without being provided with light lifting duties and that Short himself seemed eager to work on the "kill floor," where he earned more money. We are not prepared to fault a person for persevering in order to earn a living. Short testified that he was taking pain medicine, and he did what he was told to do. At one point during his cross-examination when asked what tasks he performed, he stated: "I do whatever they tell me to do, sir. If they come tell me to go back there and hang some more sausage or whatever, I do what they tell me to do if I want my job." He also testified that he would "work anywhere [he] c[ould] to make ... a dollar." Short is not the first claimant with a compensable injury that continued to work.
¶ 23. In Leatherwood, the claimant, after sustaining a back injury, did not miss one day of work for five months until he suffered a second injury, which led to his surgery. See Leatherwood, 908 So.2d at 178(¶ 13). Likewise, in White, the claimant received treatment over several years and underwent multiple surgeries while continuing to work before being awarded benefits. See White, 913 So.2d at 1006 (¶¶ 5-15). The fact that Short took his prescribed pain medicine and continued to work, and even sought the higher paying "kill floor" tasks, does not disprove his injury nor should it preclude the injury from being compensable.
¶ 24. The dissent notes that the ALJ determined there were conflicting statements by Short concerning the onset of his pain and numbness. The medical records reflect an entry on July 3, 2006, which states that Short described symptoms of weakness, numbness, and tingling for a little over a year, and an entry in January 2006 that states he experienced pain for three months. After seeking help at the emergency room for the onset of pain that occurred after participating in the transportation of the desk, Short was diagnosed with a degenerative condition, but a preexisting condition is not a bar to recovery "if the employment aggravated [or] accelerated" the condition. Harrell, 856 So.2d at 506(¶ 7). As stated, there are multiple entries where Short told medical personnel that he experienced sudden pain after lifting the desk. A review of the medical records reveals that Short never gave any reason other than moving the desk for the sudden worsening of his pain, nor is there anything in the record that indicates that Short ever sought treatment for pain or weakness prior to the incident with the desk. It is imprudent to ignore multiple statements made to medical personnel for the purpose of seeking treatment because of statements about a prior pain or weakness. As stated above, even if a claimant has a preexisting condition, it will not bar recovery if a work-related incident worsens the claimant's condition. Id.
¶ 25. Wilson argues that Short never indicated to it that he was injured on the job. However, undisputed testimony shows that shortly after moving the desk, Short presented a medical excuse to Tammy Stowe that indicated he had been treated at the University Hospital and that he should not lift anything heavier than five pounds until cleared by neurosurgery. Also, other co-workers testified that Short complained of back pain and other ailments throughout the months preceding his surgery. Short's situation is analogous to the claimant's in Adolphe Lafont USA, Inc. v. Ayers, 958 So.2d 833, 836-37(¶ 8) (Miss.Ct.App.2007), wherein this Court upheld compensability even though the employer *61 claimed that no record existed of an accident, and the accident occurred more than a year earlier.[5] In Ayers, "witnesses for the company did not deny that Ayers told them of an accident but stated that they could not remember." Id. Short did not file an incident report in December 2005, shortly after the accident. However, shortly after assisting with the desk, Short did present a medical excuse, with work limitations imposed, to Stowe.[6] Stowe testified that she is the person who handles the time and wage records, as well as the workers' compensation claims, for Wilson. Also, she is a member of the family that owns Wilson. Short also testified that he told his supervisor, Welch, that he had experienced a "pop" in his neck as well as pain while moving the desk, and he complained off and on at work during the following eight months, until his surgery, that he had hurt his neck. It is notable that the record is devoid of any testimony that Short, an employee of Wilson for approximately twenty-eight years, had ever filed a workers' compensation claim prior to this one, as well as the uncontradicted evidence that Short is basically illiterate. Short simply may not have realized that he needed to specifically tell Stowe, at the time he gave her the medical excuse, that he had injured himself while moving the desk. After all, he continued to work, while taking his pain medication, until the pain ultimately led to his surgery months later. For all the foregoing reasons, we find the record establishes that this is a "[d]oubtful claim[] [that] should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law." Leatherwood, 908 So.2d at 179 (¶¶ 20-21).

II. WHETHER THE COMMISSION ERRED IN NOT ALLOWING SHORT TO SUBMIT ADDITIONAL MEDICAL EVIDENCE THEREBY IGNORING THE CONSTRUCTION AND INTENT OF THE MISSISSIPPI WORKERS' COMPENSATION ACT.
¶ 26. The decision of whether to reopen a case or not is one which is purely discretionary with the Commission, and the Commission's decision will not be reversed absent a clear abuse of discretion. Smith v. Container Gen. Corp., 559 So.2d 1019, 1023 (Miss.1990). However, the right to reopen proceedings for the purpose of introducing testimony inadvertently omitted has been liberally allowed, even in criminal trials on formal hearing. Id. at 1024. The supreme court has addressed similar situations, and this Court finds that the case of Wells-Lamont Corp. v. Watkins, 247 Miss. 379, 387, 151 So.2d 600, 604 (1963) provides guidance in the instant appeal.
¶ 27. In Watkins, the claimant announced that she rested her case, expecting the testimony of the doctor who performed her surgery to be presented to the attorney-referee through her employer, who had given notice that it would call the doctor to testify. Id. at 382, 151 So.2d at *62 601. However, the doctor was not called, and her claim was dismissed. Id. The Commission affirmed the attorney-referee's decision, but the circuit court reversed stating that the Commission has a duty to fully develop the issues involved between the parties and to admit additional testimony. Id. at 382, 151 So.2d at 601. In affirming the circuit court and remanding the case for further proceedings, the supreme court observed, that as a general rule, the right to reopen proceedings to take further evidence in workers' compensation proceedings is within the sound discretion of the hearing officer, but in Watkins, the attorney-referee should not have dismissed the claim until it had been fully developed. Id. at 388, 151 So.2d at 604. The supreme court was of the further opinion that the Commission should have admitted the introduction of the testimony on the motion of the appellant under the peculiar circumstances in the case. Id.
¶ 28. Although Short did not anticipate his physician, Dr. Louis Harkey, would be called as a witness, he apparently thought that Dr. Harkey's medical records proved a causal connection between the incident at work and his subsequent surgery. After the ALJ's ruling on April 20, 2007, Short's attorney apparently sought a letter from Dr. Harkey, which supported Short's assertion of a work-related injury, as well as Dr. Harkey's opinion about the extent of Short's impairment. Short then submitted a motion to supplement the record to the Commission on June 11, 2007, prior to the hearing before the full Commission.
¶ 29. Along with the dissent, we are fully aware that "[t]he decision to reopen a workers' compensation case is purely discretionary with the Commission, and the Commission's order will not be reversed absent a clear abuse of discretion.... [And][t]he Commission's procedural rules are obviously less formal than those of a trial court." Mid-Delta Home Health, Inc. v. Robertson, 749 So.2d 379, 387(¶ 29) (Miss.Ct.App.1999) (internal citations omitted). However, "the [t]estimony of ... doctors [is] vital to [a] claimant's case and the [C]ommission should not ... arbitrarily dismiss[ ][it] ... without hearing this testimony." Day Detectives, Inc. v. Savell, 291 So.2d 716, 721 (Miss.1974). Moreover, "[i]nformal proceedings are encouraged in workmen's compensation cases and are so designed that the [C]ommission can best ascertain the rights of the parties and prevent unnecessary delays, costly appeals, rehearings, etc." Id. Unlike the claimant in Savell, Short's claim was not dismissed. But, considering that none of his co-workers could definitively refute Short's claim of moving the desk, his claim of being injured, or that his injury was related to work, we find that the relaxed evidentiary standard of the Mississippi Workers' Compensation Commission supported granting Short's motion to supplement the record.[7]
¶ 30. The letter from Short's physician was not new or cumulative evidence; it merely reflected a concise statement of Short's condition along with an opinion from Dr. Harkey that the incident at work "at least contributed to his preexisting condition." It also contained Dr. Harkey's opinion regarding Short's degree of impairment and ability to work in the future. The ALJ had noted, "neither Dr. Harkey, who performed the surgery, nor any other physician has offered an opinion linking Mr. Short's condition to lifting a desk or any other event at work." Dr. *63 Harkey's letter addressed exactly what the ALJ stated was the "real question" in the matter: "whether [Short] was injured at work." Wilson argues that the letter is not in compliance with Mississippi Workers' Compensation Commission Procedural Rule 9 because "[t]he [r]ule specifically precludes opinions composed by counsel, and is intended to apply only to notes and reports composed and generated by the physician in the ordinary course of medical practice." Letters requesting the opinions of physicians are not precluded under Procedural Rule 9. The supreme court in Liberty Mut. Ins. Co. v. McKneely, 862 So.2d 530, 535(¶ 15) (Miss.2003) opined that "[w]e note that it would not have been unduly burdensome for [the claimant] to ask ..., his own physician, to provide a clear statement to the insurer indicating the doctor's opinion that the fibromyalgia was related to the workplace injury." (Emphasis added). A request for a statement from a physician that states the physician's opinion about the claimant's injury, the causal connection, or the extent of a disability is not precluded by the procedural rules of the Commission. Procedural Rule 9, subpart 7 states in part: "affidavits shall not contain opinions or other matters composed by attorneys for the signature of physicians. The Commission intends for this rule to pertain to narrative notes and reports composed and generated by the physician in the ordinary course of medical practice."
¶ 31. There is nothing in the record that indicates Short's counsel "composed" the letter. The letter from Dr. Harkey merely begins with the following statement: "This is in response to your letter dated May 15, 2007 regarding my patient, Mr. Wade Short." Then Dr. Harkey addressed Short's emergency room visit; the diagnosis; Dr. Harkey's opinion regarding the contribution the work-related incident had on Short's preexisting condition; the necessity of Short's surgery; and Short's estimated partial permanent impairment. Short complied with the procedural rule requirements regarding his motion to supplement the record, and the record indicates that the letter from Dr. Harkey was the same type of request that the supreme court noted was lacking by the claimant in McKneely.
¶ 32. Wilson also argues that allowing the letter would violate its due process rights and relies on this Court's opinion in Public Employees' Retirement System v. Wright, 949 So.2d 839 (Miss.Ct.App.2007). Wright is factually distinguishable from the instant matter. In Wright, the Disability Appeals Committee requested a second independent medical evaluation, and the claimant complied. Id. at 842(¶ 11). After that, the claimant was notified that the Committee was to reconvene to take the physician's report under advisement, but since the purpose was to present additional medical testimony, the claimant's presence would not be required. Id. The Committee determined, based on the physician's report, that the claimant was not disabled; rather, she was simply choosing not to work. Id. at (¶ 12). The claimant in Wright was specifically instructed not to attend the hearing where the new evidence was to be presented, and she was not given an opportunity to rebut the evidence or supplement the record with her own evidence. Id. at (¶ 17). Wright is an extreme comparison to the case at hand.
¶ 33. In this case, the Commission did not admit one party's evidence without providing opportunity for the other party to respond or rebut the evidence. It simply denied Short's motion to supplement. There is no indication that Wilson's due process rights would have been violated by the admission of Dr. Harkey's letter, *64 if they too were given a chance to supplement or respond based on the letter. As already touched upon, Wilson relies on the Mississippi Workers' Compensation Commission Procedural Rule 9 to support the denial of Short's motion to supplement. However, the language of Procedural Rule 9 within itself does not preclude the supplementation of evidence. Procedural Rule 9 states:
All testimony and documentary evidence shall be presented at the evidentiary hearing before the Administrative Judge which hearing shall be stenographically reported or recorded. Where additional evidence is offered on the review before the Full Commission, it shall be admitted in the discretion of the [C]ommission. A motion for the introduction of additional evidence must be made in writing at least five (5) days prior to the date of the hearing of the review by the Full Commission. Such shall state with particularity the nature of such evidence, the necessity therefor, and the reason it was not introduced at the evidentiary hearing.
Procedural Rule 9 is purely procedural; it does not within itself preclude the Commission's discretion to allow supplementation to the record. Short's motion to supplement the record was filed on June 13, 2007, and the full [C]ommission's order was issued on August 30, 2007. Short's motion was timely filed under Procedural Rule 9. The procedural rules should not be used as a tool to circumvent the spirit and intent of the legislative act. When addressing the interpretation of the act, the supreme court held, in part, that:
The courts have very generally held that the workmen's compensation acts should, must, or will be accorded a broad or liberal construction or interpretation, on the various grounds that the acts are remedial in their nature, and that the acts are remedial in their purposes, objects, or operation, that they constitute commendable legislation, or humane, humanitarian, paternal, or social legislation, that they have a beneficent or beneficial purpose, that they are enacted for worthy, public, humane, or humanitarian purposes, that they are grounded in justice, and economically sound, affect the public welfare or interest, establish or are founded on a public policy, and are authorized by the police power....
On the other hand, the acts are not to be given a strict construction or application, nor are they to be given a narrow, strained, forced, harsh, rigid, unrealistic, fanciful, or technical construction or interpretation.
L.B. Priester & Son, Inc. v. Dependents of Bynum, 244 Miss. 185, 197, 137 So.2d 907 (1962) (internal citations and quotations omitted).
¶ 34. Later, the supreme court addressed the Commission's and the court's position in workers' compensation matters and stated:
The review of the decisions of the Worker's Compensation Commission is like the review of any other administrative body which sits as a trier of fact. Absent an error of law, and if the decision of the Commission is based upon substantial evidence, the decision will be affirmed on appeal.
. . . .

This is not to say that the Court will merely "rubber stamp" the Commission's actions. Where no evidence or only a scintilla of evidence supports a Worker's Compensation Commission decision, this Court does not hesitate to reverse.

Because of the broad policy declarations made by the Mississippi Legislature in adopting the Worker's Compensation *65 Act, this Court has given liberal construction to the compensation statutes. Where the matter may be an even question, this Court has found and will likely continue to find in favor of the injured worker.

Metal Trims Indus., Inc. v. Stovall, 562 So.2d at 1297 (internal citations omitted) (emphasis added).
¶ 35. We are of the opinion that Short's case certainly qualifies as an "even question" scenario, and the ALJ's decision, to disregard Short's statements regarding his medical care providers and to rely on Short's co-worker's lack of memory as conclusive evidence that Short's testimony was not credible, was arbitrary. We are mindful that it "is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules." Robinson Prop. Group v. Newton, 975 So.2d 256, 260 (Miss.Ct.App.2007) (citation omitted). It is a rare day. After an exhaustive reading of the record, we are convinced that Short met his burden of proving, by a preponderance of the evidence, that he had an injury, or at least an exacerbation of a preexisting injury, arising out of the scope and course of his employment. To reiterate, four co-workers attested to the fact that Short participated, to some degree, in moving the desk at the behest of his supervisor; no co-worker could definitively state that Short had not lifted the desk at some point; Short's medical records indicate that he conveyed to medical personnel that he suffered acute pain after lifting a heavy desk at work; there is no evidence in the record that indicates Short ever gave a conflicting reason to medical personnel for the injury; and the ALJ noted that Short indeed suffered an injury. In determining that the Commission erred in not finding Short's injury to be work related, we are also of the opinion that the Commission erred when it denied Short's motion to supplement the record with a letter from Short's physician that substantiated and coalesced the medical evidence already in the record. The letter from Dr. Harkey specifically addressed the issue that the Commission determined Short had not addressed: that the injury was causally connected to the incident at work. It bears repeating, "[d]oubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law." Leatherwood, 908 So.2d at 180(¶ 20). Therefore, the judgment of the circuit court is reversed, the order of the Commission is vacated, and this case is remanded to the Commission for further proceedings consistent with this opinion.
¶ 36. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND MAXWELL, JJ.
CARLTON, J., Dissenting.
¶ 37. I must respectfully dissent from the majority's holding to reverse the Mississippi Workers' Compensation Commission's (Commission) decision and to remand this case to the Commission to determine benefits. I disagree with the majority's decision to re-weigh the evidence before the Commission as well as its holding that the Commission erred in not allowing Wade Short to supplement *66 the record on appeal. Because this Court's standard of review is extremely limited, I would affirm the circuit court's judgment upholding the decision of the Commission.
¶ 38. This Court's standard of review in a workers' compensation appeal is limited to determining whether the Commission's decision is supported by substantial evidence. Casino Magic v. Nelson, 958 So.2d 224, 228(¶ 13) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App. 1999)). "The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review." Id. (citing Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court "will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." Id. (citing Westmoreland, 752 So.2d at 448(¶ 8)). We maintain this deferential standard of review even when we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). Though we defer to the Commission's findings of fact, "[w]e review the Commission's application of the law de novo." Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218(¶ 30) (Miss.Ct.App.2005) (citing ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 45(¶ 10) (Miss. 1999)).

I. WHETHER THE COMMISSION ERRED WHEN IT FOUND THAT SHORT'S INJURY WAS NOT WORK RELATED.
¶ 39. The majority focuses its analysis on the evidence that supports Short's case, rather than the evidence supporting the Commission's decision. This Court cannot "re-weigh the evidence and [is] not authorized to substitute [its] own judgment of where the more persuasive weight of the evidence might lie." Thomas v. Pascagoula Mun. Separate Sch. Dist., 854 So.2d 25, 28(¶ 10) (Miss.Ct.App.2003) (citing Lanterman v. Roadway Express, Inc., 608 So.2d 1340, 1345 (Miss.1992)). Because this Court cannot re-weigh the evidence, I find the majority's analysis improper. I find substantial evidence in the record to support the Commissions's finding that Short failed to meet his burden of proof to show that he experienced a work-related injury.
¶ 40. The Commission affirmed the findings of the Administrative Law Judge (ALJ). Therefore, we must analyze whether substantial evidence exists in the record to support the ALJ's findings of fact. In his findings of fact and conclusions of law, the ALJ points to Short's inconsistent statements made to medical personnel regarding his injury, his failure to report his injury to his supervisors, his continuing to work without restrictions, and the accounts of witnesses who could not remember whether Short actually lifted the desk to move it upstairs.
¶ 41. Short told medical personnel at the University of Mississippi Medical Center that he injured himself at work while carrying a desk in December 2005. However, on two other occasions, Short gave different accounts of when the pain in his neck started. Short testified at the hearing that he informed Mike Welch (Welch), his supervisor, that he felt a "pop" in his neck and experienced pain. Welch, however, testified that Short did not help carry the desk. Welch remembered that Short carried the desk drawers, while Welch and Willie Keyes (Keyes) carried the desk. Furthermore, Welch testified that he had no memory of Short telling him about the "pop" and ensuing pain.
*67 ¶ 42. Keyes also testified that he and Welch carried the desk while Short carried the drawers. Billy Joe Raglan testified that he watched Welch and Keyes carry the desk, and Short carried the drawers. Jimmy Jones also testified that he saw Short carrying the desk drawers. Based on the evidence before him, the ALJ found that Short failed to meet his burden of proof. The failure of any of the witnesses to remember Short actually carrying or lifting the desk supports the ALJ's finding that Short had not met his burden of proving a work-related injury.
¶ 43. The Commission reviewed the testimony and exhibits before affirming the ALJ's decision. Ultimately, the Commission judges the credibility of the witnesses. Manning v. Sunbeam-Oster Household Prods., 979 So.2d 736, 740(¶ 13) (Miss.Ct. App.2008) (citing Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461(¶ 27) (Miss. 2005)). Our standard of review requires that we defer to the Commission's findings of fact, even when we would have been persuaded to rule otherwise if we had been the fact-finder. Vance, 641 So.2d at 1180. Thus, even in cases where we disagree with the Commission's findings, the Commission, as fact-finder, is entitled to our deference. In light of our limited scope of review in workers' compensation cases, I would affirm the Commission's decision regarding Short's failure to meet his burden of proof.

II. WHETHER THE COMMISSION ERRED IN NOT ALLOWING SHORT TO SUBMIT ADDITIONAL MEDICAL EVIDENCE.
¶ 44. I further disagree with the majority's holding that the Commission erred in not allowing Short to submit additional evidence after the hearing before the ALJ. Short sought permission from the Commission to admit a letter from Dr. Harkey, his physician, explaining Short's course of treatment and that the incident at work "at least contributed to [Short's] preexisting condition of cervical spondylosis." Dr. Harkey drafted the letter in response to a request from Short's counsel. The letter simply summarized Dr. Harkey's medical records regarding his treatment of Short. Mississippi Workers' Compensation Commission Procedural Rule 9 states, in part:
All testimony and documentary evidence shall be presented at the evidentiary hearing before the Administrative Judge which hearing shall be stenographically reported or recorded. Where additional evidence is offered on the review before the Full Commission, it shall be admitted in the discretion of the Commission. A motion for the introduction of additional evidence must be made in writing at least five (5) days prior to the date of the hearing of the review by the Full Commission. Such shall state with particularity the nature of such evidence, the necessity therefor, and the reason it was not introduced at the evidentiary hearing. If additional evidence is admitted, it shall be stenographically reported or recorded and become part of the record.
(Emphasis added).
¶ 45. Short's motion to supplement the record failed to comply with the above standard. In his motion to supplement the record, Short failed to explain why he did not present the narrative at the hearing before the ALJ. Further, as the majority stated, "[t]he decision to reopen a workers' compensation case is purely discretionary with the Commission, and the Commission's order will not be reversed absent a clear abuse of discretion." Mid-Delta Home Health, Inc. v. Robertson, 749 So.2d 379, 387(¶ 29) (Miss.Ct.App.1999) (citing Smith v. Container Gen. Corp., 559 So.2d 1019, 1023 (Miss.1990)). The Commission enjoys broad discretion in establishing procedural *68 rules for the administration of workers' compensation claims, and this Court will rarely reverse the Commission for actions taken in the enforcement of its own procedural rules. Id. at (¶ 30) (quoting Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986)). I do not find the Commission acted arbitrarily in exercising its discretion by refusing to allow Short to supplement the record with the letter from Dr. Harkey.
¶ 46. I find substantial evidence in the record to support the Commission's findings of fact. Further, I find the Commission acted within its discretion in denying Short's motion to supplement the record. Because this Court's scope of review is limited, I would affirm the Commission's decision.
GRIFFIS AND MAXWELL, JJ., JOIN THIS OPINION.
NOTES
[1] Research indicates that:

Cervical spondylosis is caused by degenerative disc disease and usually produces intermittent neck pain in middle-aged and elderly patients. This pain usually responds to activity modification, neck immobilization, isometric exercises, and medication.... Cervical spondylotic myelopathy is the most serious and disab[ling] condition of this disease.... [And] [s]urgical intervention is indicated for patients presenting with severe progressive neurologic defects.
[2] Both Welch and Keyes testified about a narrow entryway that contained a table or desk. Welch stated, "[i]t's a small area so two people [are] about all that could handle the desk because you ain't got but probably five or six foot [sic] between the door and table." Welch also testified that the desk involved is approximately 34 inches tall and 32 inches wide with a top that is approximately 36 inches wide.
[3] Mississippi courts have held that "[s]ubstantial evidence, though not easily defined, means something more than a `mere scintilla' of evidence, and that it does not rise to the level of `a preponderance of the evidence.'" Delta CMI v. Speck, 586 So.2d 768, 773 (Miss. 1991) (internal citations omitted). Therefore, it may be said that substantial evidence "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Bryan Foods, Inc. v. White, 913 So.2d 1003, 1008(¶ 20) (Miss.Ct.App.2005) (citation omitted).
[4] This determination is in accordance to the charge set forth by the Harrell court. The court held that when determining whether a claimant should have been awarded benefits, the court should analyze "whether the three elements of a worker's compensation claim were proved by a fair preponderance." Harrell, 566 So.2d at 1264.
[5] In Ayers, the only evidence that the claimant had stepped in a hole at work, resulting in an injury, was the claimant's own testimony. Ayers, 958 So.2d at 836-37(¶ 8). This Court found her testimony to not be "unreasonable to the point of unbelievability." Id. Unlike Ayers, Short has testimony from three co-workers that he was involved in moving the heavy desk. It is not unreasonable to believe Short's testimony that in the milieu of lifting, maneuvering, and transporting the heavy desk from the truck, through a hallway, over a desk, and upstairs to a second floor that he injured his neck. After reading the record, we find that Short's testimony is not "unreasonable to the point of unbelievability."
[6] Short was given the medical excuse by the University Hospital when he went to the emergency room, shortly after participating in the transportation of the desk.
[7] Procedural Rule 8 of the Mississippi Workers' Compensation Commission states in part: "In compensation hearings[,] the general rules of evidence shall be relaxed so as to permit the introduction of any relevant and competent evidence."