ISHEE, J.,
for the Court:
¶ 1. In this appeal, we are not called upon to decide whether the claimant, Bill Crabtree, is entitled to workers’ compensation benefits. Instead, we must determine if the judgment of the Mississippi Workers’ Compensation Commission (the Commission), as upheld by the Jones County Circuit Court, was erroneous in allowing Crabtree to reopen his claim after the administrative judge (AJ) had ruled that he was not eligible for workers’ compensation benefits. The employer and carriers argue that Crabtree failed to carry his burden of proof during the hearing and should not be allowed to reopen his claim to gather additional medical evidence which could have been obtained prior to the hearing. They also argue that the motion to reopen does not comply with the statutory and procedural rules of workers’ compensation law governing reopening a claim. The claimant cites the general rule that the reopening of a case for the purpose of showing vital facts should be liberally allowed. He argues that he should be allowed to reopen his claim to conduct additional discovery in order to “present additional medical evidence which the [AJ] found lacking in the matter.”
*993 ¶ 2. The Commission has not issued a final order. Accordingly, we lack jurisdiction to address the merits of this appeal and dismiss.
FACTS AND PROCEDURAL HISTORY
¶ B. A short statement of facts about Crabtree’s work history and claimed injuries is necessary before we move to the matter of law on which we rest our decision. Crabtree performed several jobs for Superior Manufacturing Group, Inc. (Superior) [1] after he was hired at the Moselle, Mississippi plant in 1997 at age forty-seven. Prior to working at Superior, Crab-tree had worked in physical production-based work in other workplaces since his graduation from high school. His first job required that he take bundles of materials from one part of the plant to the sewing-machine operators in another part of the plant. Next he became a spreader for the same employer which required him to place loads of material on a table for cutters. He then went to work as a dump-truck driver and later obtained his commercial driver’s license and worked as a commercial truck driver. In his next job, he cut molding into preset lengths for a furniture manufacturer. After that, he ran a cutting saw for the production of air-conditioning parts.
¶4. Crabtree’s first job with Superior was as an assembler where he put together industrial floor mats. He worked in this capacity for three years, which required that he use different materials such as corrugated steel, rubber, and tile to make floor mats. Crabtree was then transferred to the lamination department where his job was to place rolls of tile upside down on a table, spray them with glue, and then put foam on them to make a mat. He would then use a saw to cut the mat and place the finished mat onto a skid. Crabtree later became a forklift driver for Superior, delivering material to operators around the plant. He testified that sometimes he would lift heavy items and place them on the forklift for delivery. He testified that he weighed about 128 pounds at the time and was about five feet six inches tall and had never worked such hard manual labor before the forklift job.
¶ 5. Crabtree’s first claim for workers’ compensation stems from an incident in August 2008 when he was a forklift driver for Superior. He testified that he looked up at something high; and his right arm went numb, something that had not occurred before. When he took his arm down, he said the arm “would wake back up.” He was sent to Dr. Alan Colvin who referred him to a neurologist, who performed a motor nerve conduction test on him. The test results showed degenerative disc disease in his neck. Dr. Michael Patterson diagnosed Crabtree with chronic neck and back pain on September 12, 2008, which Crabtree told the doctor had persisted for years. He was not a candidate for surgery, so his doctor recommended conservative treatment, including pain medication and injections. In November 2003, a lumbar MRI revealed a broad-based bulge at L4-5, a slight bulge at L5-Sl, and degenerative changes of the lower spine. Superior denied that the alleged injury was work related.
¶ 6. In March 2004, Crabtree alleged he sustained a second injury, this time to his back. Superior again denied that the second injury was work related. One of the *994 doctors who examined Crabtree diagnosed lumbar strain, and the following month, the same doctor noted that Crabtree “had aggravated his back some the other day when he did a normal movement that he does at work ... [and] pretty much exacerbated something that was pre-existing for him.”
¶ 7. Evaluating the medical evidence, the AJ found that Crabtree had failed to carry his burden of showing a causal connection between the two alleged injuries and his job duties. Instead, the AJ stated the following regarding the incident when Crabtree looked up and felt neck and arm pain: “[T]he medical evidence proved only that Claimant had degenerative cervical disc disease. There was no medical evidence of a causal connection to any incident at work and Claimant’s cervical disc problems.” As to the March 2004 back injury, the AJ noted that Crabtree had received prior medical treatment for back pain in August 1994, when an x-ray showed he had “degenerative disc disease at L5-S1.” Dr. Patterson diagnosed him with “mechanical back pain due to degenerative disc disease.” The AJ noted that a lumbar MRI just four months prior to the claimed injury confirmed lower disc bulges and disc degeneration.
¶ 8. Regarding the second claim, the AJ found that Dr. Patterson did not testify whether Crabtree’s degenerative disc disease in his lower back was aggravated or exacerbated by his work incident. The only physician to mention a causal connection concerning either of the claimed injuries was Dr. Susi Folse, who provided pain-management treatment, and who wrote on April 2, 2004, that Crabtree “seems to have aggravated his back some the other day when he did a normal movement at work. He has pretty much exacerbated something that was pre-existing for him.” The AJ found insufficient evidence of a causal connection and stated that the evidence instead showed that the claimed work injury was just “a temporary aggravation of his pre-existing lumbar degenerative disc disease.” Thus, the AJ rejected the second claim.
¶ 9. The AJ’s seventeen-page decision was handed down on October 17, 2008, denying both claims. On November 3, 2008, Crabtree filed a petition to reopen. On June 16, 2009, this Court issued an opinion in Short v. Wilson Meat House, LLC, 37 So.3d 50 (Miss.Ct.App.2009). Short held that the right to reopen a workers’ compensation case for the introduction of testimony should be liberally allowed and that the testimony of doctors is vital to a claimant’s case. Id. at 62 (¶¶ 27-29). Specifically, we stated the claimant’s hearing should be reopened so a letter from his physician, not previously introduced, be allowed into evidence because the letter specifically addressed the issue that the Commission found the claimant had not addressed “that the injury was causally connected to the incident at work.” Id. at 65(¶ 35).
¶ 10. Nine days after the Short opinion was handed down, the AJ in the present case, citing Short, granted Crabtree’s motion to reopen, and she granted a discovery period of ninety additional days. Superior appealed the AJ’s order to the Commission, which affirmed the order. Superior then appealed the Commission’s decision to the circuit court, which also affirmed the Commission’s decision to reopen the case. This Court’s decision in Short was reversed by the Mississippi Supreme Court in June 2010 in Short v. Wilson Meat House, LLC, 36 So.3d 1247 (Miss.2010). The motion to reopen was reversed in part on the very point cited by the AJ as a reason to allow Crabtree to reopen. Thus, Superior now appeals the decision of the circuit court. However, the *995 Commission has not issued a final judgment in this case from which to appeal.
ANALYSIS
¶ 11. We must first address the procedural issue of appealing non-final or interlocutory judgments. We note at the outset that we lack jurisdiction in this matter. This Court has held that “[ijnterlocutory orders by the Workers’ Compensation Commission are not appealable.” Cunningham Enters., Inc. v. Vowell, 937 So.2d 32, 34 (¶ 3) (Miss.Ct.App.2006). Further, an appeal may not be taken unless the Commission’s order is final. Flexible Flyer, Inc. v. Harris, 755 So.2d 50, 51 (¶ 7) (Miss.Ct.App.1999) (citations omitted).
¶ 12. The AJ ordered this case to be reopened to allow for additional medical evidence. The Commission and the circuit court affirmed that decision. Currently, the case is open pending presentation of the medical evidence. Because no final order has been issued and the case remains open, we must dismiss this case for lack of jurisdiction.
¶ 13. THE APPEAL IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Royal Indemnity Company and Twin City Fire Insurance Company were insurance carriers for Superior Manufacturing, Inc. during the time of the two claims alleged by Crab-tree. Earlier in the litigation, Crabtree’s two claims were consolidated. We will refer to the appellants in this opinion collectively as "Superior.”