949 So.2d 839 (2007)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant
v.
Kelly L. WRIGHT, Appellee.
No. 2005-CC-02188-COA.
Court of Appeals of Mississippi.
February 13, 2007.
*840 Mary Margaret Bowers, attorney for appellant.
Janice T. Jackson, Jackson, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
KING, C.J., for the Court.
¶ 1. The Public Employees' Retirement System of Mississippi (PERS) appeals the circuit court's decision to award disability retirement benefits to Kelly Wright, reversing PERS's finding that Wright was not disabled. Because the Court finds that the Disability Appeals Committee violated Wright's constitutional right to due process, the Court reverses and remands this case to PERS for proceedings consistent with this opinion.

FACTS
¶ 2. On June 6, 2000, Wright was working as a registered nurse with the Mississippi Department of Health. On that date, Wright testified that she began experiencing chest pains and believed she was having a heart attack. A doctor at the facility where she worked gave her Paxil and had her rest before going home. When her symptoms did not subside, she sought treatment at a clinic on June 8, 2000. The clinic found no abnormalities. The next day, she saw another doctor, who conducted an electrocardiogram test (EKG) but found nothing abnormal.
¶ 3. On June 12, 2000, Wright saw Dr. Covington, a psychiatrist, who diagnosed her with panic disorder of recent onset and prescribed 50 mg. of Zoloft daily and Ativan as needed.[1] Following her appointment with Dr. Covington, Wright spent two weeks in bed and a third at home, recovering from her anxiety attack. During this time, Wright's mother stepped in. *841 She moved Wright and Wright's young daughter into her home and took charge of Wright's finances and all household chores.
¶ 4. After three weeks off from work, Wright returned to her job. She continued working for the Health Department and was transferred to a different facility within the Department several times until she finally left her job in September 2002. At the hearing before the Disability Appeals Committee, Wright's mother testified that Wright was only able to continue working because she had no other responsibilities. Wright's mother handled most of the household chores and was responsible for caring for Wright's daughter.
¶ 5. Wright continued to see Dr. Covington on a regular basis until February 5, 2001, when he transferred her to Dr. Bishop. She saw Dr. Bishop regularly and continued her course of medications with some increases in her dosage of Zoloft until November 2001, when she began seeing Dr. Gupta. Dr. Gupta diagnosed Wright with panic disorder, generalized anxiety disorder, and depressive disorder not otherwise specified. Her dosage of Zoloft was increased again to a maximum of 200 mg before Dr. Gupta changed her prescription to Prozac. She continued to take Ativan as needed. Dr. Gupta's records also indicate that she was receiving psychotherapy. Also in 2002, Wright was diagnosed with fibromyalgia, a chronic condition characterized by fatigue and widespread pain in the muscles, ligaments, and tendons.[2]
¶ 6. On April 3, 2002, Dr. Gupta determined that Wright was totally disabled due to her panic disorder and anxiety attacks. He issued an opinion of total disability on September 9, 2002, October 29, 2002, and March 6, 2003.
¶ 7. On August 19, 2002, Wright applied for benefits with PERS. Following a hearing, the medical board requested an independent medical examination. Wright saw Dr. Manning on January 16, 2003. His report stated that Wright "described a history of depression, anxiety, panic attacks and recent diagnosis of fibromyalgia." He found that her panic attacks were more indicative of agoraphobia and social phobia and dysthymic disorder, a chronic but less severe form of depression. His "opinion" stated that he believed a combination of medication and "empirically based psychological treatment . . . would give her the best opportunity for improvement and possibly give her a better opportunity to return to work." Dr. Manning did not, however, explicitly state whether, in his opinion, Wright was likely to be permanently disabled.
¶ 8. Wright's initial application was denied on March 20, 2003. The medical board "determined that there was insufficient objective evidence" to support a finding that Wright was disabled and unable to perform her duties as a nurse.
¶ 9. Wright appealed that finding to the Disability Appeals Committee. The Committee held a hearing on May 19, 2003. Wright's mother attended the hearing and testified on behalf of her daughter because she contended that her daughter could not handle the stress of testifying at the hearing. Wright's mother testified that Wright would take her daughter to and from school and would, on occasion do a load of laundry, prepare a meal, or wash dishes. Otherwise, Wright spent most of her day resting and sleeping. Wright's mother stated that despite the fact that Wright maintained a schedule with a minimal amount of stress, Wright continued to feel stressed and depressed and felt the *842 onset of panic attacks several times a week.
¶ 10. This testimony is corroborated by Wright's own statements to Dr. Manning, in which she stated that she needed ten to eleven hours of sleep per night plus regular naps during the day. Any activity must be interspersed with periods of rest. She also advised Dr. Manning that she had to avoid grocery stores and doctors (particularly dentists) and that any situational stress (a doctor's appointment, a visit from a relative) caused her anxiety that would trigger a panic attack. While Wright stated that the medication prevented a full-blown attack, her symptoms lasted approximately thirty minutes to an hour.
¶ 11. Following the hearing, the Committee requested a second independent medical evaluation. Wright submitted to an examination by Dr. Webb on July 14, 2003. On July 28, 2003, the Disability Appeals Committee sent Wright a copy of Dr. Webb's report with a letter stating that the Committee would reconvene on August 4, 2003, to take Dr. Webb's report under advisement. The letter stated as follows: "Since the purpose of this meeting is to present additional medical testimony requested by the DAC, there will be no opportunity for testimony and your presence will not be required."
¶ 12. The Disability Appeals Committee met on August 4, 2003, to receive and review Dr. Webb's report and make its decision. Dr. Webb's report stated that he took her medical and family history and conducted a mental status exam. His report also stated that Wright advised him that she had panic attacks every other day, but once she took her medication, the initial symptoms subsided so that she did not suffer a full-blown attack. Dr. Webb's report further stated that Wright "does suffer with panic disorder but it is in full remission with the Prozac and Ativan and she is doing quite well." He concluded that Wright chose not to work and was not disabled or incapacitated due to her panic disorder. He found that her panic disorder was not permanent, severe, or debilitating. He determined that "[r]eturning her to work would do her quite well."
¶ 13. After receiving and reviewing Dr. Webb's report, the Committee deliberated and made its decision. In its recommendation, also dated August 4, 2003, the Committee determined that, based on Dr. Webb's opinion that Wright was not disabled but was choosing not to work, Wright was not entitled to disability benefits. The Committee noted as follows: "We recognize that there are several contrary opinions in this case, but psychiatric problems are generally fluid in nature and obviously, the panic disorder from which Ms. Wright suffers is not disabling at all, when it is treated correctly. She is presently being treated optimally and according to Dr. Webb, not only is Ms. Wright ready to go back to work, but work would be good for her." The Board of Trustees adopted the Committee's recommendation on August 26, 2003.
¶ 14. Wright then appealed that decision to the circuit court. The trial court reversed the ruling of the Disability Appeals Committee and granted Wright disability retirement benefits. In his opinion, the trial judge concluded that the Committee either ignored or failed to consider the medical evidence regarding Wright's constant struggle with anxiety and depression, despite continued medical treatment and that, as a result of the Committee's failure, the Committee's decision was not supported by substantial evidence.

STANDARD OF REVIEW
¶ 15. In reviewing the action of a state administrative agency, this Court applies the same standard of review that *843 the trial court must follow. Unless the order of the administrative agency "(1) was unsupported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the administrative agency to make; or (4) violated some statutory or constitutional right of the complaining party," the Court must affirm the agency's decision. Mississippi Sierra Club v. Mississippi Dep't of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss.2002).

ANALYSIS
¶ 16. On appeal, PERS contends that the trial court erred in re-weighing the evidence that the Commission considered in reaching its determination that Wright was not disabled. PERS argues that the Commission's decision was supported by substantial evidence and, therefore, is not arbitrary and capricious.
¶ 17. Wright argues in response that the trial court did not re-weigh the evidence but properly found that the sole contradictory opinion from Dr. Webb, when balanced against the overwhelming weight of evidence that supported a finding of disability, did not constitute substantial evidence. Wright also states that PERS violated her constitutional right to due process under the Fifth and Fourteenth Amendments to the United States Constitution when it accepted and relied upon Dr. Webb's report without offering Wright the opportunity to correct what she contends are numerous factual errors in his report.
¶ 18. Administrative agencies must afford minimal due process consisting of notice and an opportunity to be heard. See, e.g., State Oil & Gas Bd. v. McGowan, 542 So.2d 244, 246 (Miss.1989). While the Committee gave Wright the opportunity to be heard at the initial hearing, it purposely excluded her from its August 4, 2003, hearing, in which it received and reviewed Dr. Webb's examination. The Committee notified Wright of the upcoming hearing by letter dated July 28, 2003. The July 28, 2003, letter enclosed a copy of Dr. Webb's report but advised Wright that she should not attend because, although new medical evidence would be presented (in the form of Dr. Webb's report), "there will be no opportunity for testimony."
¶ 19. After receiving Dr. Webb's report at the August 4, 2003, hearing, the Committee then made its decision regarding Wright's disability. In that decision, the Committee relied heavily on Dr. Webb's report, adopting his finding that Wright's panic disorder was in full remission with medication and that Wright was choosing not to work. Wright contested much of the medical history and many of the conclusions that Dr. Webb listed in his report. She attempted to submit those corrections as part of the record on appeal, as she was not given the opportunity to refute Dr. Webb's report prior to the Committee's decision.
¶ 20. The Committee dismissed the findings of Wright's treating physician and the other objective evidence of her disability and relied solely on Dr. Webb's report in reaching its decision to deny her benefits. By accepting Dr. Webb's report as new evidence and relying on it without providing Wright with the opportunity to contest Dr. Webb's report or supplement her own medical records with her most recent treatment reports, PERS denied Wright the opportunity to be heard in a meaningful way.
¶ 21. Accordingly, this Court holds that the Committee, by accepting new evidence without providing Wright the opportunity to rebut the evidence or supplement her own records, violated Wright's procedural due process rights and the concept of fundamental fairness. This holding is consistent *844 with decisions of other courts, which have held that, in the context of an administrative hearing, the agency's decision to accept additional evidence without providing the opportunity for rebuttal of that evidence violates due process. See Ryker v. Town of Bethany, 97 Conn.App. 304, 904 A.2d 1227, 1234 (2006) (holding that while administrative hearings, such as the workers' compensation hearing at issue, generally are informal, "administrative hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . [P]rocedural due process mandates that the commissioner cannot consider additional evidence submitted by a party without granting the opponents . . . the opportunity to examine that evidence and to offer evidence in explanation or rebuttal."); State ex rel. Chrysler Plastic Prods. Corp. v. Industrial Comm'n of Ohio, 39 Ohio App.3d 15, 528 N.E.2d 1279, 1281 (1987) (holding that "when new evidence is considered due process demands that the opposing party be given the opportunity to rebut that evidence or submit additional evidence," particularly when the new evidence is outcome-determinative); Nationwide Mut. Ins. Co. v. Insurance Comm'r, 67 Md.App. 727, 509 A.2d 719, 725 (1986) (holding that "procedural due process is denied when an administrative agency uses extra-record evidence given it after a hearing for the basis of its decision," citing Temmink v. Board of Zoning Appeals, 205 Md. 489, 109 A.2d 85 (1954)).
¶ 22. Because Wright suffered a violation of her Fifth and Fourteenth Amendment right to procedural due process, this Court reverses the finding of the circuit court and remands the case to PERS' Disability Appeals Committee. On remand, the Committee shall provide Wright with the opportunity to refute Dr. Webb's report and provide supplemental evidence from her treating physician.
¶ 23. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED TO THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Zoloft is prescribed for major depression  a persistently low mood that interferes with everyday living. . . . Zoloft is also used to treat the following: Premenstrual dysphoric disorder (PMDD), a condition marked by a depressed mood, anxiety or tension, emotional instability, and anger or irritability in the two weeks preceding menstruation. Obsessive-compulsive disorder (unwanted thoughts that won't go away and an irresistible urge to keep repeating certain actions, such as hand-washing or counting). Panic disorder (unexpected attacks of overwhelming anxiety, accompanied by fear of their return). Social anxiety disorder (extreme shyness in social situations that interferes with an individual's work and social life). Post-traumatic stress disorder (re-experiencing a dangerous or life-threatening event through intrusive thoughts, flashbacks, and intense psychological distress). Zoloft belongs to a class of drugs called selective serotonin re-uptake inhibitors (SSRIs). http://www.pdrhealt h.com/drug_info/rxdrug_profiles/drugs/zol1503.shtml (last visited January 24, 2007)(Physician's Desk Reference website).

Ativan is used in the treatment of anxiety disorders and for short-term (up to 4 months) relief of the symptoms of anxiety. It belongs to a class of drugs known as benzodiazepines. . . . Anxiety or tension related to everyday stress usually does not require treatment with Ativan. http: //www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ati1036.shtml (last visited January 24, 2007)(Physician's Desk Reference website).
[2] Definition of fibromyalgia provided by the Physician's Desk Reference website at http://www.pdrhealth.com/patient_education/BHG 01RH02.shtml (last visited January 24, 2007).