MAXWELL, J„
 

 for the Court.
 

 ¶ 1. The Hinds County Circuit Court affirmed the ruling of the Public Employees’ Retirement System of Mississippi (PERS) Board of Trustees denying Kelly Wright disability benefits. She now claims: (1) the law-of-the-case doctrine applies; (2) PERS’s decision was not supported by substantial evidence; and (3) PERS improperly applied a heightened standard of disability to her case.
 

 ¶ 2. Finding the denial of Wright’s disability claim is not supported by substantial evidence, we reverse and remand.
 

 
 *384
 
 PROCEDURAL HISTORY
 

 ¶ 3. Wright’s current appeal brings a somewhat unusual procedural history. Her initial application for benefits was filed with PERS on August 19, 2002.
 
 [1]
 
 On March 20, 2003, PERS denied Wright’s initial application for disability benefits. Wright then appealed to the Disability Appeals Committee (DAC), and on August 4, 2003, the DAC recommended denial of benefits. The PERS Board of Trustees adopted the DAC’s recommendation on August 26, 2003.
 

 ¶ 4. Wright appealed to the Hinds County Circuit Court, and on September 13, 2005, the circuit court found PERS’s decision was not supported by substantial evidence and reversed PERS’s denial of benefits.
 

 ¶ 5. On appeal from the circuit court, this Court remanded the case to PERS for due process violations, which stemmed from PERS’s subsequent review of a consulting psychiatrist’s report and PERS’s denial of Wright’s opportunity to respond to the psychiatrist’s findings.
 
 Pub. Employees’ Ret. Sys. v. Wright,
 
 949 So.2d 839 (Miss.Ct.App.2007)
 
 (Wright I).
 
 On remand, PERS again denied disability benefits, but this time the circuit court affirmed the denial. Wright now appeals the recent denial of benefits.
 

 FACTS
 
 [2]
 

 ¶ 6. Wright worked as a nurse with the Mississippi Department of Health. On June 6, 2000, she began experiencing chest pains and consulted a doctor at the facility where she worked. Then on June 8, 2000, she sought treatment at a clinic. No abnormalities were found after electrocardiogram testing.
 

 ¶ 7. On June 12, 2000, Dr. Frank Cov-ington, a psychiatrist, diagnosed Wright with panic disorder and prescribed Zoloft and Ativan. Wright and her daughter then moved in with her mother, Nathaleen Farmer. She spent two weeks in bed and a third at home before returning to work. On December 6, 2002, Wright left her employment with the State of Mississippi.
 

 ¶ 8. In the time between her initial diagnosis, in June 2000, and her disability application with PERS, on August 19, 2002, Wright consulted multiple doctors for treatment of her medical issues. Dr. Cov-ington transferred Wright to Dr. Andrew Bishop, a psychiatrist, who increased her Zoloft prescription, continued her on Ati-van, and diagnosed her with adjustment disorder and possibly histrionic traits. Dr. Bishop treated Wright from July 2001 to November 2001. She began to see Dr. Krishan Gupta, a psychiatrist, in January 2002. Dr. Gupta diagnosed Wright with panic disorder, generalized anxiety disorder, depressive disorder, and fibromyalgia. In April 2002, Dr. Gupta determined Wright was totally disabled because of these conditions. Dr. Gupta issued three similar opinions that Wright was disabled and not able to handle work-related stress due to anxiety disorder and panic disorder which are related to the fibromyalgia.
 
 [3]
 

 ¶ 9. Wright also sought treatment from a rheumatologist, Dr. James Hensarling. In October 2002, Dr. Hensarling confirmed Dr. Gupta’s fibromyalgia diagnosis. He
 
 *385
 
 issued letters to PERS regarding Wright’s disability in September 200B and February 2007. Dr. Hensarling wrote that Wright was disabled because fibromyalgia requires a great deal of coping skills, and her psychological impairments would inhibit improvement. On August 19, 2002, Wright applied for disability benefits with PERS.
 

 ¶ 10. At PERS’s request, in January 2003, Dr. Edward Manning performed a neuropsychological examination of Wright. Dr. Manning diagnosed Wright with depression, anxiety, panic attacks, agoraphobia, social phobia, and fibromyalgia. In his “opinion,” it was possible that a combination of medications and “empirically based psychological treatment ... would give [Wright] the best opportunity for improvement and possibly give her a better opportunity to return to work.” Dr. Manning did not provide an opinion about whether Wright was permanently disabled.
 

 ¶ 11. On April 21, 2003, Wright was notified by her insurance company that she had been found to be totally and permanently disabled and that she qualified for long-term disability benefits. Wright was also approved by the Social Security Administration to receive disability benefits.
 

 ¶ 12. Wright’s initial application with PERS was denied, and she appealed to the DAC. The DAC conducted a hearing on May 19, 2003. After the hearing, the DAC requested a second independent medical evaluation, this time by psychiatrist, Dr. Mark Webb.
 

 ¶ 13. In July 2003, Dr. Webb met with Wright for one brief consultation. Though he did not confirm Wright’s medical history or review records from her other treating physicians, Dr. Webb found Wright does suffer from panic disorder, but her condition is in full remission with her medications. Based on this lone, short consultation with Wright, Dr. Webb concluded she had chosen not to work and returning to work would do her well.
 
 [4]
 

 ¶ 14. The DAC prohibited Wright from presenting evidence to refute Dr. Webb’s findings at her initial hearing, which gave rise to the due process violations we addressed in
 
 Wright I.
 
 On remand, at the June 8, 2007, DAC hearing, Wright’s mother introduced additional medical records from Wright’s treating physicians.
 
 [5]
 
 She also provided medication records, and a letter from the Mississippi Board of Nursing denying renewal of Wright’s nursing license.
 
 [6]
 
 Wright’s mother took issue with several aspects of Dr. Webb’s report and provided an essentially different patient history.
 

 ¶ 15. After considering the additional evidence, PERS again rejected Wright’s disability claim. But this time on appeal, a different circuit court judge affirmed PERS’s denial of disability benefits.
 
 [7]
 
 Wright appeals from this judgment.
 

 STANDARD OF REVIEW
 

 ¶ 16. This Court may not re-weigh the evidence or substitute its judgment for
 
 *386
 
 that of the administrative agency.
 
 Pub. Employees’ Ret. Sys. v. Howard,
 
 905 So.2d 1279, 1284(¶ 15) (Miss.2005). Rule 5.03 of the Uniform Rules of Circuit and County Court states that an agency’s decision will not be disturbed on appeal unless it was: (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the power of the agency, or (4) violates the complainant’s statutory or constitutional rights.
 
 Pub. Employees’ Ret. Sys. v. Smith,
 
 880 So.2d 348, 350-51(¶ 12) (Miss.Ct.App.2004) (citing
 
 Pub. Employees’ Ret. Sys. v. Dearman,
 
 846 So.2d 1014, 1018(¶ 13) (Miss.2003)).
 

 ¶ 17. An administrative agency’s decision will be deemed arbitrary and capricious if it is not based on substantial evidence.
 
 Pub. Employees’ Ret. Sys. v. Allen,
 
 834 So.2d 50, 53(¶ 10) (Miss.Ct.App.2002). Our supreme court has defined substantial evidence as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.”
 
 Pub. Employees’ Ret. Sys. v. Marquez,
 
 774 So.2d 421, 425(¶ 13) (Miss.2000). Substantial evidence is “more than a ‘mere scintilla’ or suspicion.”
 
 Id.
 

 DISCUSSION
 

 I. LAW-OF-THE-CASE DOCTRINE
 

 ¶ 18. In
 
 Wright I,
 
 the circuit court found that substantial evidence did not support PERS’s denial of Wright’s request for disability benefits, and reversed PERS’s decision. On appeal, we reversed and remanded the case to PERS based solely on the previously-addressed due process violations. Now, on appeal after remand, Wright argues the law-of-the-case doctrine should foreclose re-litigation of whether she is entitled to benefits. Specifically, she claims because the circuit court originally found PERS’s decision was not supported by substantial evidence, the circuit court’s decision became the law of the case and could not be re-litigated on remand.
 

 ¶ 19. The law-of-the-case doctrine is the general practice of courts to refuse to re-examine what has been previously decided.
 
 TXG Intrastate Pipeline Co. v. Grossnickle,
 
 716 So.2d 991, 1019(¶ 97) (Miss.1997). The law of the case, “once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts.”
 
 Pub. Employees’ Ret. Sys. v. Freeman,
 
 868 So.2d 327, 330(¶ 10) (Miss.2004) (quoting
 
 Moeller v. Am. Guarantee and Liab. Ins. Co.,
 
 812 So.2d 953, 960(¶ 22) (Miss.2002)). However, the doctrine is inapplicable if there are “material changes in evidence, pleadings or findings.”
 
 Id.
 
 (citing
 
 Moeller,
 
 812 So.2d at 960(¶ 22)).
 

 ¶20. Wright claims this doctrine applies because PERS did not present additional evidence on remand. But we point out that PERS is not required to present evidence of the non-existence of a disability. Instead, Wright bore the burden of proving the existence of a disability.
 

 ¶ 21. On remand, Wright presented additional evidence to the committee in the form of doctors’ opinions, medication and patient history via her mother, and a letter denying renewal of her nursing license. Not only did Wright present additional evidence, but the hearing resulted in new findings by PERS. Because of these material changes in both the evidence presented and the findings by PERS, the law-of-the-case doctrine does not apply.
 

 ¶ 22. Furthermore, Wright wrongly characterizes our holding in
 
 Wright I
 
 as “not finding] fault with Judge Kidd’s ruling on the existing evidence.” This is an erroneous interpretation of the analysis
 
 *387
 
 and disposition reached by this Court in
 
 Wright I,
 
 as we made no findings regarding the legal sufficiency of the evidence presented or relied upon, nor did we address the merits of the circuit court’s decision. We simply remanded to PERS because of due process violations at the agency level. For these reasons, we find the law-of-the-case doctrine inapplicable.
 

 II. SUBSTANTIAL EVIDENCE OF DISABILITY
 

 ¶ 23. On appellate review, we are instructed to determine whether substantial credible evidence exists to support PERS’s decision that Wright was not disabled, not whether there is substantial evidence of Wright’s position.
 
 Thomas v. Pub. Employees' Ret. Sys. of Miss.,
 
 995 So.2d 115, 119(¶ 17) (Miss.2008).
 

 ¶ 24. We begin our review of Wright’s claim with a clear understanding of this disability-benefits program. PERS Medical Board, Disability Appeals Committee, and Board of Trustees are tasked with determining whether Wright qualifies for non-work-related disability retirement. In performing this inquiry, the medical board, after an evaluation of medical evidence, must certify that “the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retiredf.]” Miss. Code Ann. § 25-ll-113(l)(a) (Supp.2009). Next, the medical board must apply the statutory definition of “disability,” which is:
 

 [T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation or the incapacity to perform the duties of any employment covered by the Public Employees’ Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.
 

 Id.
 
 An employee must prove non-work-related disability to the medical board according to the requirements of section 25-ll-113(l)(a).
 
 Case v. Pub. Employees’ Ret. Sys.,
 
 973 So.2d 301, 311(¶23) (Miss.Ct.App.2008). “The agency, not the reviewing court, acts as the finder of fact.”
 
 Id.
 
 (citing
 
 Pub. Employees’ Ret. Sys. v. Cobb,
 
 839 So.2d 605, 609(¶12) (Miss.Ct.App.2003)). Fact-finding includes evaluating the credibility of witnesses, and PERS has the sole responsibility for determining which medical evaluations to rely upon.
 
 Id.
 
 The Mississippi Constitution prohibits the judiciary from retrying matters appealed from agencies de novo.
 
 Id.
 
 at 311(¶ 24) (citing
 
 Miss. State Tax Comm’n v. Mississippi-Alabama State Fair,
 
 222 So.2d 664, 665 (Miss.1969)). We must affirm the agency’s decision if it is supported by substantial evidence and is not arbitrary or capricious.
 
 Id.
 
 (citing URCCC 5.03).
 

 ¶ 25. On remand, the DAC determined Wright presented no objective evidence of fibromyalgia or other disorders, and Dr. Gupta’s notes did not document a permanent and total disability. Furthermore, the DAC found that both Dr. Webb and Dr. Manning concluded Wright’s treatment was inadequate. The DAC determined Wright “merely has a diagnosis that needs to be treated appropriately,” rather than an incapacitating disability.
 

 A. Dr. Webb’s Report
 

 ¶ 26. As we begin our review of PERS’s findings, we are immediately troubled by a glaring inconsistency in PERS’s reasoning underlying its prior denial and its most recent denial of Wright’s disability claim. First, we note that previously, on August
 
 *388
 
 4, 2003, based on Dr. Webb’s examination of Wright, the DAC found:
 

 We recognize that there are several contrary opinions in this ease, but psychiatric problems are generally fluid in nature and obviously, the panic disorder from which Ms. Wright suffers is not disabling at all, when it is treated correctly.
 
 She is presently being treated optimally and according to Dr. Webb, not only is Ms. Wright ready to go back to work
 
 [,]
 
 but work would be good for her.
 

 Wright I,
 
 949 So.2d at 842(¶ 13) (emphasis added). Based on the DAC’s conclusion that Wright was being treated optimally, the DAC found Wright was not disabled.
 

 ¶ 27. However, after we remanded the case to PERS, the DAC altered its reasoning and determined:
 

 So while we have Dr. Gupta saying that Ms. Wright is disabled, we have
 
 both Dr. Manning and Dr. Webb saying that Ms. Wright has not received adequate treatment for her illness and needs to be optimized.... Dr. Manning and Dr. Webb agree that Ms. Wright’s treatment has not been optimal.
 

 (Emphasis added).
 

 ¶ 28. These findings are clearly inconsistent. We simply cannot see how the DAC can base its 2003 denial on its conclusion that Wright was treated “optimally,” and turn around in 2007 and claim this same report from Dr. Webb illustrates Wright “has not received adequate treatment for her illness and needs to be optimized.”
 

 ¶ 29. The supreme court defines arbitrary as “not done according to reason or judgment, but depending on the will alone.”
 
 Marquez,
 
 774 So.2d at 429(¶ 34) (citing
 
 Burks v. Amite County Sch. Dist.,
 
 708 So.2d 1366, 1370(¶14) (Miss.1998)). Capricious means “done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.”
 
 Id.
 
 at 429-30(¶ 34) (citing
 
 Burks,
 
 708 So.2d at 1370(¶14)). “If an administrative agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.”
 
 Id.
 
 at 430(¶ 35) (quoting
 
 Miss. State Dep’t of Health v. Natchez Cmty. Hosp.,
 
 743 So.2d 973, 976(¶13) (Miss.1999)).
 

 ¶ 30. Dr. Webb offered no new findings to the DAC on June 8, 2007, and it reviewed the same report as it had earlier in 2003. Furthermore, these inconsistent findings do not concern mere collateral matters. Instead, these contradictory conclusions form the main bases the DAC relied upon in 2003 and on remand in 2007 to deny Wright’s claim.
 

 ¶ 31. In addressing whether substantial evidence existed to form the basis of PERS’s 2007 denial, we note that it appears PERS was not satisfied with Dr. Manning’s diagnosis, so it sought a second independent evaluation of Wright. We also point out that Dr. Webb only conducted one brief evaluation of Wright, which took place in July 2003. He did not review her complete medical records from her other physicians, nor did he conduct any follow-up interviews with her family or the other doctors. This is shown by the fact he dictated his report on the date of his examination.
 

 ¶ 32. After Wright was initially denied benefits by the DAC in 2003, she continued to be treated by Dr. Gupta and Dr. Hen-sarling for five more years. Neither of these doctors’ opinions that Wright is disabled have ever wavered.
 

 ¶ 33. This Court has recognized, “PERS has the discretion to determine which physicians’ assessments to consider
 
 *389
 
 and how much weight should be given to each assessment.”
 
 Brakefield v. Pub. Employees’ Ret. Sys.,
 
 940 So.2d 945, 948(¶ 12) (Miss.Ct.App.2006) (citing
 
 Byrd v. Pub. Employees’ Ret. Sys.,
 
 774 So.2d 434, 438(¶ 15) (Miss.2000)). However, the DAC’s puzzling contradictory analysis leaves the impression that its decision was indeed arbitrary and without support of substantial, objective evidence.
 

 ¶ 34. Further, the DAC’s denial also appears to be based in part on pure speculation. The DAC’s denial relies heavily on Dr. Manning’s evaluation of Wright. In interpreting Dr. Manning’s diagnosis, PERS emphasizes its conclusion that: “the most important part of [Dr. Manning’s] report states that [Wright]
 
 would
 
 improve if her medications and treatment were optimized.” (Emphasis added).
 

 ¶ 35. However, we must point out this is not what Dr. Manning found. Rather, Dr. Manning concluded a combination of medications and empirically-based psychological treatments
 
 may
 
 help provide Wright with the best opportunity for improvement. But Dr. Manning did not go as for as to opine that this course of treatment
 
 would
 
 enable her to perform her duties as a nurse as PERS suggests. Instead, Dr. Manning very carefully emphasized that such treatment, “would give her the best
 
 opportunity
 
 for improvement and
 
 possibly
 
 give her a
 
 better opportunity
 
 to return to work.” (Emphasis added) We note, as we did previously in
 
 Wright I,
 
 that “Dr. Manning did not ... explicitly state whether, in his opinion, Wright was likely to be permanently disabled.”
 
 Wright I,
 
 949 So.2d at 841(¶ 7).
 

 ¶ 36. Nevertheless, the DAC utilizes Dr. Manning’s opinion to support its conclusion that Wright is not disabled. The reliance on such speculation or suspicion does not constitute substantial evidence but merely “exemplifies an arbitrary, capricious decision.”
 
 See Pub. Employees’ Ret. Sys. v. Ross,
 
 829 So.2d 1238, 1243(¶ 24) (Miss.2002) (“PERS is required to make findings; doubt does not constitute a finding. Instead, it constitutes suspicion, a basis upon which the denial of disability benefits is arbitrary and capricious.”).
 

 ¶ 37. Essentially, the DAC’s recent finding that Wright was not optimally treated is used by the DAC to support its conclusion that Dr. Gupta’s treatment was not aggressive enough, so Wright is not disabled. Though we do not re-weigh the evidence, we must point out the lack of it. There was simply no substantial, objective medical evidence before PERS to establish that if Wright’s medications had been changed more often she
 
 would
 
 be able to return to work. Likewise, there is no medical evidence that Dr. Gupta failed to abide by the standard of care in his treatment and diagnosis of Wright.
 

 B. Fibromyalgia
 

 ¶ 38. The DAC found that Wright’s diagnosis of fibromyalgia “clearly was not supported by objective testing,” and that “[n]o trigger points were documented, and to a doctor, the lack of documentation means that it does not exist.”
 

 ¶ 39. In reaching this finding, the DAC disregarded both of Wright’s treating physicians’ diagnosis that her fibromyalgia, along with her psychological impairment to cope, rendered her disabled. The DAC also disregarded Dr. Hensarling’s notes indicating classic trigger point patterns. Perhaps more peculiar is the DAC’s disregard for both of the independent medical examinations performed by Dr. Webb and Dr. Manning. Both of these examinations were conducted at PERS’s request, and both evaluations confirmed the fibromyal-gia diagnosis. “[M]edical diagnoses by licensed physicians constitute objective evi
 
 *390
 
 dence of disability.”
 
 Case,
 
 973 So.2d at 317(¶ 37). We are mindful that PERS is the finder of fact. However, the supreme court has previously held that PERS’s opinion is not conclusive, and PERS cannot choose to ignore uncontroverted evidence provided by treating physicians.
 
 Dearman,
 
 846 So.2d at 1018 (¶ 11).
 

 ¶ 40. Dr. Gupta’s and Dr. Hensarling’s findings of fibromyalgia are objective evidence, and the findings were confirmed by Dr. Webb and Dr. Manning. PERS’s rejection of these physicians’ medical opinions as subjective assessments of Wright’s condition was improper. Furthermore, the substantial evidence sufficient to withstand appellate scrutiny must be found in the record, not in the minds of the doctors sitting on the PERS board.
 
 Thomas,
 
 809 So.2d at 694(¶ 14). The only evidence the DAC relies upon is its own conclusion that Wright’s diagnosis was not supported by “objective testing.” While PERS is not required to put forth contradictory evidence, “it is required to make a nonarbitrary decision as to disability that comports with the statutory definition thereof.”
 
 Case,
 
 973 So.2d at 317(¶ 37) (quoting
 
 Ross,
 
 829 So.2d at 1241(¶ 17)). In this case, the DAC appears to have arbitrarily picked which findings to accept from Dr. Webb and Dr. Manning. The DAC also fails to point to any objective evidence in the record to indicate Wright’s fibromyalgia does not exist and does not contribute to her disabling condition.
 

 C. Nursing License
 

 ¶ 41. Finally, Wright is prescribed mood altering medications, and even Dr. Webb found these medications were necessary. The Mississippi Board of Nursing classifies working while under the influence of mood altering medications as unprofessional conduct. Mississippi Board of Nursing Regulations, Vol. 35, Ch. II, Rule 1.2(e);
 
 see also
 
 Miss.Code Ann. § 73-15-29 (Rev.2008) (giving authority to the nursing board to deny, revoke, or suspend license of those violating nursing board rules and regulations). The DAC failed to consider Wright’s potential legal inability to work as a nurse while taking the prescribed medications.
 

 ¶42. Not only was Wright prescribed mood altering medications, she was later, in 2005, denied renewal of her nursing license after receiving her treating physicians’ diagnoses. Specifically, the Mississippi Board of Nursing cited Dr. Gupta’s report from April 2003, diagnosing Wright with anxiety disorder, panic disorder, and fibromyalgia, as well as, his determination that Wright is unable to handle work-related stress and, therefore, cannot perform the duties of a registered nurse. The Board of Nursing also relied on Dr. Hen-sarling’s report from September 2003, which stated “[fjibromyalgia is a chronic pain condition which requires a great deal of coping skills, and [Wright’s] psychological setting would inhibit any improvement.”
 

 ¶ 43. Though the Board of Nursing’s non-renewal of Wright’s nursing license had not yet occurred at the time of her claim, the record reflects that Wright suffered disqualifying psychological conditions and that Wright was on mood altering medications. The DAC did not address whether Wright’s prescribed medications impacted her lawful ability to perform the usual duties of her employment as a nurse. Instead, the DAC only acknowledged receipt of the non-renewal letter and pointed out that Wright had never appealed the decision.
 

 ¶ 44. Based upon the reasons addressed herein, we find PERS’s denial of benefits was arbitrary, capricious, and not supported by substantial evidence. Thus, we
 
 *391
 
 remand the case to PERS for an award of benefits to Wright.
 

 III. STANDARD OF DISABILITY
 

 ¶ 45. Having found reversible error, we do not address Wright’s argument that PERS used an incorrect standard in addressing her disability claim.
 

 ¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.
 

 [1]
 

 . At the time of her claim, Wright was an employee of the State of Mississippi and had 5.25 years of service credit.
 

 [2]
 

 . We accept the facts as presented in
 
 Wright I
 
 and, therefore, include only a brief summary of those facts necessary for this appeal.
 

 [3]
 

 .The DAC indicated Dr. Gupta's opinion was first submitted in April 2002; however, Wright contends the correct date is April 3, 2003.
 

 [4]
 

 . Wright’s mother contends her daughter’s sole consultation with Dr. Webb lasted approximately forty-five minutes.
 

 [5]
 

 . Wright feared she would suffer a panic attack if she attended, so her mother, Farmer, represented her at the PERS hearings.
 

 [6]
 

 . On January 5, 2005, Wright received a letter from the Mississippi Board of Nursing denying her license renewal. The letter cited Dr. Gupta's opinion from April 3, 2003, and Dr. Hensarling's opinion from September 30, 2003, as basis for the denial.
 

 [7]
 

 .On the first appeal to the circuit court, the case was decided by the Honorable Winston L. Kidd, but on remand, the Honorable William F. Coleman presided over Wright’s appeal to the Hinds County Circuit Court.