# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-SA-01548-COA

**MISSISSIPPI DEPARTMENT OF REVENUE**                                    **APPELLANT**
**F/K/A MISSISSIPPI STATE TAX COMMISSION**

v.

**JOHNNY REB AVIATION, LLC**                                                      **APPELLEE**


| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2013 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ABIGAIL MARSHALL MARBURY |
| | GARY WOOD STRINGER |
| ATTORNEYS FOR APPELLEE: | JOHN THOMAS LAMAR III |
| | JOHN THOMAS LAMAR JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | VACATED ASSESSMENT OF USE TAX AND ORDERED REFUND OF ASSESSMENT PLUS STATUTORY INTEREST |
| DISPOSITION: | REVERSED AND RENDERED - 10/14/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.    The Mississippi Department of Revenue (MDOR) determined Johnny Reb

Aviation LLC (Johnny Reb), an airplane dealership, was also chartering the airplanes it was

offering for sale, which meant it had to pay a use tax. Johnny Reb disagreed and appealed to

the chancery court.

¶2.    The only question before the chancellor was whether MDOR's decision to assess a use

tax was arbitrary and capricious or unsupported by substantial evidence. And in this case, the

chancellor confirmed that substantial documentary evidence—including Johnny Reb's operating agreement, federal tax returns, invoices, and general ledger—supported MDOR's conclusion that Johnny Reb had been using for charters the airplanes it was trying to sell. Yet the chancellor still vacated the assessment. The chancellor accepted an alternative explanation and made his own determination that, contrary to the company's records and documentary evidence, Johnny Reb had not been using the planes for charters.

¶3. After review, we find, according to the Mississippi Supreme Court's recent decision in *Equifax, Inc. v. Mississippi Department of Revenue*,[1] this determination was outside the chancery court's appellate purview, which was limited to deciding if MDOR's decision was supported by substantial evidence or was arbitrary and capricious. Because substantial evidence supported MDOR's decision, it was clear error for the chancellor to vacate MDOR's decision. We thus reverse and render, reinstating MDOR's assessment.

## Background

### I. Audit and Decision by MDOR

¶4. Michael Massey owns Tate Air LLC, and John Roebuck owns JR-MS Aviation. Their two entities partnered in March 2005 to form Johnny Reb. Johnny Reb holds a license to buy and sell airplanes. And between 2005 and 2008, Johnny Reb bought three airplanes, selling the first two and losing the third in a fire.

¶5. MDOR decided to conduct a sales-tax audit for Johnny Reb's first three years in business. But once the auditor began investigating Johnny Reb's records, she quickly realized

---

[1] *Equifax, Inc. v. Miss. Dep't of Revenue*, 125 So. 3d 36 (Miss. 2013).

a use-tax audit would be more appropriate.

¶6.    Mississippi imposes a use tax on personal property—including aircraft—"for the privilege of using . . . [the aircraft] within the state[.]" Miss. Code Ann. § 27-67-5 (Rev. 2010). The use-tax rate is the same as the sales-tax rate, which for aircraft is three percent of the purchase price. Miss. Code Ann. § 27-67-5(a); Miss. Code Ann. § 27-65-17(1)(d) (Rev. 2010). No use tax will be imposed, however, when the three-percent sales tax has already been paid on the aircraft—or when another state has already levied a sales or use tax. Miss. Code Ann. § 27-67-7(a) (Rev. 2010). Here, Johnny Reb paid no sales taxes when it purchased its three airplanes. So if it used the planes for anything other than to try to sell them, each plane used was subject to a use tax at the rate of three percent of the purchase price.

¶7.    Combing through the invoices Johnny Reb had provided, the auditor noticed that, while a few invoices clearly stated that the purpose of the flight was to demonstrate the aircraft to a potential buyer, many more invoices listed Massey, Roebuck, or companies owned by them as the customer—indicating Massey and Roebuck were using the planes for their personal use and not to further sale. Additionally, the company's general ledger had multiple references to "wet leases"—i.e., chartered flights. And references to "charter income," "charter service," and specific charter destinations were listed throughout Johnny Reb's profit-and-loss statements. Further, its federal tax returns for the years 2005, 2006, 2007, and 2008 each indicated Johnny Reb was a "charter" business, and each depreciated the value of the airplanes, consistent with the planes being used for charter services.

¶8.    The auditor also reviewed Johnny Reb's operation agreement, which stated Johnny Reb was "being formed to operate a general aviation business that will provide air transportation

3

for various businesses and individuals." And the website for Massey's related farm business, Lyndale Farms, advertised Johnny Reb as "an airline leasing business" and listed information about the cost of leasing the planes but did not mention the sales prices of the aircraft. The auditor also noted that Johnny Reb's insurance policy claimed the covered aircraft were to be flown for personal use. From all of this evidence, the auditor concluded Johnny Reb had been using its planes for non-sales-related flights, subjecting each plane to a three-percent use tax totaling $138,470. *See* Miss. Code Ann. § 27-67-5; Miss. Code Ann. § 27-65-17(d).

¶9.   Johnny Reb appealed to MDOR's Board of Review. After a hearing, the Board affirmed the assessment. Johnny Reb then appealed to MDOR's full Commission, which likewise affirmed after a second hearing. MDOR then ordered Johnny Reb to pay the assessment, plus statutory interest—$163,388 total.

## II.   *Appeal and Decision by Chancery Court*

¶10.   Johnny Reb paid MDOR the $168,388 assessment under protest and then perfected an appeal to the Tate County Chancery Court. *See* Miss. Code Ann. § 27-77-7(1) (Rev. 2010). In line with the procedures of section 27-77-7(5), trial was held in March 2013.

¶11.   Four months later, the chancellor entered his opinion. In this opinion, the chancellor stated section 27-77-7(5) gave him the "ultimate authority" to try the facts. And according to him, the factual question he had to resolve was "whether [Johnny Reb] was chartering or leasing airplanes as its principal business." After listing the facts on which MDOR had relied to assess the use tax, the chancellor agreed that "[t]hese facts standing alone and without clarification or explanation by [Johnny Reb] indicated that [it] in fact was a business involved predominantly in the chartering or leasing of aircraft." The chancellor went even further,

4

stating that if one were "to simply look at the written representations of websites, operating agreements, tax returns[,] and insurance policies, perhaps no other conclusion could be reached than that which [MDOR] reached."

¶12. But the chancellor said he had not simply relied on these documents. Instead, he had "peeled back the onion" and listened to Johnny Reb's "clarification and explanation" of why —contrary to its own records—its only actions were to market and sell airplanes. Massey explained the operating agreement contained a "mistake"—that it should never have stated the purpose of the business was to provide chartered flights. He testified he had asked the attorney who prepared the agreement to correct it, but for some unexplained reason, no changes were ever made. The federal tax returns were also allegedly wrong, based on a failure to communicate with the certified public accountant who had prepared them. But by the time Massey realized what the CPA had done, he opted not to file corrected returns since there would have been no difference in the amount of federal taxes assessed. Johnny Reb's general ledger and invoices, which had been filled out by the company's in-house bookkeeper, were also supposedly incorrect. So was the Lyndale Farms website, which had been created by Massey's father-in-law.

¶13. Massey was equally adamant Johnny Reb could not have operated for-profit charter flights, because that would have violated Federal Aviation Administration (FAA) restrictions on airplane dealers.[2] Rather, he insisted all the flights logged in the general ledger and invoices were in furtherance of selling the planes, even though the ledger and invoices

---

[2] According to Massey, aviation businesses that offer for-profit charter flights must operate under a set of more stringent FAA regulations.

evidenced otherwise.

¶14.    In the end, the chancellor concluded that Johnny Reb only "[u]nder extremely limited circumstances" transported passengers for hire. But he agreed with Massey that the "purpose" of Johnny Reb's business was to sell aircraft, having been most persuaded by the testimony about the FAA restrictions. Thus, the chancellor declared the use tax erroneous. A month later, the chancellor entered his final order vacating the assessment.

¶15.    MDOR timely appealed.

## Discussion

¶16.    On appeal, we find the Mississippi Supreme Court's recent opinion *Equifax, Inc. v. Mississippi Department of Revenue*, 125 So. 3d 36 (Miss. 2013), mandates reversal of the chancellor's decision.

### I.    Chancery Court's Role on Appeal

¶17.    In his opinion, the chancellor had described his role as appellate arbiter under section 27-77-7 as that of the "ultimate authority" on the factual question "whether [Johnny Reb] was chartering or leasing airplanes as its principal business." But in *Equifax, Inc.*—which was handed down after the chancellor had entered his opinion but before he entered his final order—the supreme court clarified that a chancellor must give deference to MDOR's decision, just as it must to any other agency decision. *Equifax, Inc.*, 125 So. 3d at 42 (¶9).

¶18.    While section 27-77-7(5)[3] directs the chancery court to "give deference to the decision"

_____

[3] *Equifax, Inc.* dealt with a previous version of section 27-77-7. In that version, the relevant judicial-review language was codified in subsection (4) but has since been renumbered as subsection (5). *Compare Equifax, Inc.*, 125 So. 3d at 41 (¶8) (quoting Miss. Code Ann. § 27-77-7(4) (Rev. 2005)), *with* Miss. Code Ann. § 27-77-7(5) (Rev. 2010).

of the MDOR, it also instructs the court to "try the case de novo and conduct a full evidentiary judicial hearing on the issues raised." This language has understandably led many chancellors, including the present one, to believe the chancery court should retry the underlying facts supporting/contradicting the assessment with no deference to MDOR's conclusion. However, in *Equifax, Inc.*, the supreme court resolved the "disagreement . . . over the practical application" of this seemingly conflicting language. *Equifax, Inc.*, 125 So. 3d at 41 (¶8). The supreme court expressly rejected the notion that section 27-77-7(5)[4] somehow gives the chancery court authority to "adjudicate the wisdom/sageness of the agency's decision[.]" *Equifax, Inc.*, 125 So. 3d at 41 (¶8).

¶19.    Instead, the supreme court made clear that a chancery court's appellate function "is limited to examining the legality of the decision." *Id.* The supreme court then listed the four bases upon which chancellors may declare an MDOR decision illegal—the decision was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the power of the administrative agency to make, or (4) in violation of the petitioner's statutory or constitutional right. *Id.* (citing *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (¶12) (Miss. 2010)). Here, while the chancellor's final order tracked the language of *Equifax, Inc.* and stated that he found MDOR's assessment "unsupported by substantial evidence and . . . arbitrary and capricious," it is clear from his previously entered opinion that his decision to reverse the assessment was based on his own disagreement with the "wisdom/sageness" of MDOR's decision—not his finding the decision was illegal.

II.    **Substantial Evidence Supporting MDOR's Decision**

---

[4] *See* note 3, *supra*.

¶20. Based on the chancellor's own acknowledgment of the record evidence, MDOR's decision to assess a use tax was neither unsupported by substantial evidence nor arbitrary and capricious. "Substantial evidence" refers to "more than a 'mere scintilla' or suspicion." *Wright v. Pub. Emps. Ret. Sys. of Miss.*, 24 So. 3d 382, 386 (¶17) (Miss. Ct. App. 2009) (citation omitted). And here, MDOR did not base its conclusion that Johnny Reb was chartering airplanes it was trying to sell on mere suspicion. Rather, it based its conclusion on a variety of separately sourced evidence—including Johnny Reb's invoices, general ledger, federal tax returns, operating agreement, and financial statements. These documents all showed Johnny Reb was both chartering and using the planes for its members' personal use.

¶21. It is true that Johnny Reb offered the chancellor explanations why those documents did not accurately reflect what it had really been doing with its airplanes. But the existence of an alternate explanation or conclusion does not render MDOR's determination "arbitrary or capricious." An "arbitrary" decision is "not done according to reason or judgment, but depending on the will alone." *Id.* at 388 (¶29). A "capricious" decision is similarly done "without reason." *Id.* And here, even the chancellor agreed that MDOR had reason to assess the use tax. The chancellor had found that "[u]nder extremely limited circumstances, [Johnny Reb] did in fact transport passengers for hire." So based on the chancellor's own factual findings, the use-tax assessment was not arbitrary, capricious, or unsupported by substantial evidence.

### III. No "Principal-Business" or "For-Profit" Requirements in Use-Tax Statute

¶22. The primary reason the chancellor rejected the imposition of the use tax was that he had determined that transporting passengers for hire was not Johnny Reb's "principal business."

8

But imposition of the use-tax statute is not limited to "principal-business" use. *See* Miss. Code Ann. § 27-67-5. MDOR has never asserted Johnny Reb's principal business was chartering flights but instead freely concedes that Johnny Reb was in business to sell planes. Still, because Johnny Reb, before selling the planes, *used* them for charters and personal use, it had to pay a use tax.

¶23. The chancellor also relied heavily on the FAA airplane-dealer regulations, which prohibit for-profit flights, concluding Johnny Reb would not have used its planes in violation of the FAA. But MDOR has never suggested Johnny Reb was violating FAA rules. Rather, MDOR has maintained that these federal regulations are irrelevant to whether the *state* use-tax is appropriate.

¶24. We agree with MDOR. Just as there is no "principal-business" requirement, there is also no "for-profit" requirement in the use-tax statute. *See* Miss. Code Ann. § 27-67-5. That Johnny Reb maintains it strictly complied with FAA rules and never earned a profit off of any of its flights does not mean it never used its planes in a manner that subjected the planes to Mississippi's use tax. Evidence of any non-sales-related use—whether personal or for a charter in which Johnny Reb only recouped its operating costs—would sufficiently justify MDOR's use-tax assessment. And as we have already stated, there was substantial evidence of such use.

**Conclusion**

¶25. Our review shows Johnny Reb gave multiple indications that it was using the airplanes it was trying to sell for charters and personal use. So MDOR's decision that Johnny Reb should be taxed for chartering and using the planes for personal business was reasonable,

9

supported, and thus not subject to reversal on appeal to the chancery court. We thus reverse

the chancery court's decision and reinstate MDOR's tax assessment.

¶26. **THE JUDGMENT OF THE TATE COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.**