GRAVES, Presiding Justice,
Dissenting:
¶ 39. I agree with the majority’s finding that the Workers’ Compensation Commission did not abuse its discretion in denying Short’s Motion to Supplement the Record; however, I disagree that there was substantial evidence to support the Commission’s finding that Short had failed to prove the elements of his workers’ compensation claim. I must therefore dissent and would affirm the Court of Appeals’ decision to reverse the Circuit Court’s judgment, which affirmed the Commission’s decision. Further, I would remand the case to the Commission for a determination of the extent to which Short has suffered a loss of wage-earning capacity due to his disability.
¶ 40. The record reflects that Short was a hardworking laborer at Wilson’s Meat House (Wilson’s) for more than twenty-five years. His supervisor testified that he was a good, productive employee throughout the entire length of his employment. Moreover, throughout his many years at Wilson’s, despite experiencing pain before and especially after the desk incident, Short never once filed a workers’ compensation claim until the instant one. Rather, he “was taking pain pills and finding the work to make a living.” He “kept trying to do his job the best [he] could,” and he “[did] whatever they told [him] to do,” whether it was to go slaughter animals on the kill floor or perform other tasks, like removing the meat from the bones of slaughtered animals. Short prided himself on being a hardworking, efficient butcher, and when Wilson’s did not alter his duties to accommodate the five-pound weight restriction indicated on the work excuse he submitted, Short continued performing his customary duties until his condition wors *1256 ened to the point of needing surgery. Only then did he finally file his workers’ compensation claim. Furthermore, as explained below, it is undisputed that, on December 1, 2005, Short was involved in transporting the large wooden desk, and not a single witness was able to refute that Short, at some point, helped lift the desk itself and, in doing, suffered a neck and back injury.[13]
¶ 41. This Court has explained that in a workers’ compensation case, the claimant has the burden of establishing the follow-, ing elements by a fair preponderance of the evidence:
(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability.
Hardin’s Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss.1990).
¶ 42. As the majority explained, this Court will disturb the Commission’s order only if it is not supported by substantial evidence. Id.; Hardaway Co. v. Bradley, 887 So.2d 793, 795 (Miss.2004). “Stated differently, this Court will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.” Hardaway Co., 887 So.2d at 795 (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). As the majority also recognizes, in the workers’ compensation realm, “doubtful cases should be resolved in favor of compensation.” Hardin’s Bakeries, 566 So.2d at 1264.
¶ 43. I conclude that there was not substantial evidence to support the Commission’s finding that Short had failed to prove the elements of his workers’ compensation claim by a fair preponderance of the evidence. The overwhelming weight of the evidence indicates that Short suffered an accidental injury arising out of and in the course of his employment, and that there was a causal connection between that injury and his claimed disability.
¶ 44. First, not a single testifying witness was able to refute that, at some point, Short lifted the desk. As the Court of Appeals explained in its opinion of the instant case:
... [All of Short’s co-workers] stated that they simply could not remember whether Short lifted the desk or not. Short’s supervisor, Welch, testified that he had built the large desk and had recruited Short and another co-worker, Willie Keyes, to deliver the desk to the second floor of Wilson’s on December 1, 2005....
When specifically questioned by counsel if he remembered Short carrying the desk at any time, Welch testified that “[h]e really couldn’t say. You know, [Short] might have helped it over the table but I really couldn’t say ... you know.” Shortly thereafter, in an attempt to clarify a question, the ALJ stated to Welch, “Okay. You can’t recall whether [Short] did or didn’t [carry or lift the desk at some point]. Is that what you’re telling us?” Welch responded, ‘Yes, sir.” Early in Welch’s testimony, the ALJ asked if Short was present at the time the desk was initially taken off of the truck that delivered the desk, and Welch testified that Short was present at that time. When the ALJ asked Welch what Short was doing during the time they were taking the desk into the building, Welch testified that *1257 “we [were] all, you know, standing there trying to get the desk in.... We [were] all on break so that’s when we [were] doing that. So I don’t know....” When responding to a later question posed by the ALJ whether he kept up with what Short was doing during all of this period, Welch responded, “[n]o, sir.” Welch testified at least seven times that he “reckoned” or “assumed” events relating to Short’s involvement or that he simply could not remember what Short was doing. Although, Welch distinctly testified that Short was present during the entire episode and that Short lifted and carried the desk drawers, he presented no definitive testimony that Short did not at some point, during the transportation of the desk, lift or carry the desk. Short testified that he helped to carry the desk twice, and after he told Welch that he felt something “pop” in his neck, Keyes helped carry the desk upstairs.... Welch testified that he did not recall if Short indicated that he had hurt himself after [he, Welch, got] the desk upstairs. He also testified that he did not have any knowledge that Short ever indicated that he hurt his neck as a result of lifting the desk. Also, he did not recall if Short had ever presented a doctor’s excuse to take him off of work because of a work-related injury. However, when asked if he had heard that Short hurt his neck at work, he stated, “[y]ou know, I can’t tell you who and I don’t know exactly if they were joking or what, you know.” The ALJ then attempted to clarify Welch’s statement, and he asked Welch if he was saying that somebody might have told him that Short injured his neck at work. Welch answered, “[y]es, sir.” ...
... Keyes’s testimony was much the same as Welch’s testimony. Keyes testified that he did not remember whether Short had helped them lift the desk at any time. Also, Keyes testified that he could not even remember if Short had entered the elevator with them while they were moving the desk. After Keyes testified that Short lifted the drawers, ... [Short’s counsel asked Keyes: “If Mr. Welch testified that it’s possible [Short] could have helped y’all get the thing up over the table, you wouldn’t disagree with that if he said that was possible. You just don’t remember.” Keyes responded: “No, sir. I don’t remember.”] In the same vein, Keyes went on to testify that he could not remember whether Short had put the drawers down at any point. Neither co-worker distinctly remembered whether Short had helped lift the desk or not.
Jimmy Jones, a meat inspector for the Mississippi Department of Agriculture, was also present on the day in question .... Jones testified that he was not present downstairs when the desk was moved from the truck into the building, maneuvered over the table, through the narrow hallway, and into the elevator. Although Jones may have been able to speak about Short’s involvement upstairs, he was unable to attest to or deny Short’s account of what happened downstairs. Jones offers no contradiction to Short’s statement of the events. In regard to carrying.the drawers, Short testified as follows:
After I picked [the desk] up I felt something that popped in my neck up there. I said, Mr. Curly [i.e., Mr. Welch], I feel something that popped in my neck.
[[Image here]]
And he told me, ... you ain’t nothing but a wimp.... And that’s when Mr. Bubba Keyes [came] and helped me and Curly to pick it on up and carry it up to the office. That’s when Mike Welch told me to back up and start taking the drawers out of the desk, *1258 and carry it on up the stairs, me, him, and Bubba Keyes.
Short did not claim to have carried or lifted the desk while he was upstairs, and Jones was not downstairs to prove or disprove Short’s account of what happened downstairs.
Short v. Wilson Meat House, LLC, 37 So.3d 50, 55-57 (Miss.Ct.App.2009).
¶ 45. In sum, Short’s testimony about the occurrence of the work-related injury, while uncorroborated by other witnesses, was not refuted, and this Court has held that “the undisputed testimony of a claimant which is not so unreasonable as to be unbelievable, given the factual setting of the claim, generally ought to be accepted as true.” White v. Superior Products, Inc., 515 So.2d 924, 927 (Miss.1987). See also Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1333 (Miss.1986) (“The claimant is competent to prove his own claim, and his testimony may be accepted without corroboration. It may be acted upon although disputed by other witnesses and if undisputed and not untrustworthy, must be taken as conclusive proof of fact.”).[14] Therefore, Short’s unrefuted, reasonable testimony about the alleged work-related injury he suffered while lifting the desk should be accepted as true.
¶ 46. In addition to Short’s testimony being unrefuted, his medical records support his testimony that he suffered the work-related injury, and that the injury caused his disability. As the Court of Appeals explained:
... [M]edical records verify that Short visited the emergency room for treatment soon after the incident at work, and he reported to the triage nurse that his pain and numbness began after “lifting a heavy desk.” Although the medical records do not contain a specific statement by a doctor that lifting the desk caused Short’s injury, there is no statement or diagnosis by a physician, or other medical personnel, that contradicts Short’s statement to the emergency room personnel about the cause of his pain....
... Short’s medical records show that no doctor ever excluded the lifting incident as an event that may have exacerbated Short’s condition.... Furthermore, multiple medical records reflect that Short consistently gave the same statement about the incident at work and his injury. At no point did he state that he was injured at home or during some other activity....
Short, 37 So.3d at 58. Thus, Short presented uncontradicted testimony, supported by his medical records, that he had suffered a work-related injury, and that the injury had caused his disability. Notably, this Court has held that “it is not necessary that medical testimony [e.g., from Short’s treating physician] be supplied to establish the cause and effect of an injury of the nature which the claimant says that he sustained.”[15] Marley Constr. Co., Inc. v. *1259 Westbrook, 234 Miss. 710, 107 So.2d 104, 108 (1958). “A claimant, like any lay witness, may not undertake to make a prognosis, but he may state facts concerning his condition and these facts may be of such a nature as to enable the Board to determine the extent and duration of the disability even in the absence of medical testimony.” Id. (quoting Yocum Creek Coal Co. v. Jones, 308 Ky. 335, 214 S.W.2d 410, 412 (Ky.Ct.App.1948)).
¶ 47. In addition, as the Court of Appeals aptly noted, there is a presumption that statements made by a person seeking medical treatment are truthful. Short, 37 So.3d at 58-59. This presumption of truthfulness is embodied in Mississippi Rule of Evidence 803(4), the hearsay exception allowing admission of statements made for purposes of medical diagnosis or treatment. Id. (citing Miss. R. Evid. 803(4)). Thus, it should be presumed that Short’s reports to the emergency room nurse and his physical therapist that he had experienced pain and numbness after lifting a heavy desk were truthful.
¶ 48. Therefore, the overwhelming weight of the evidence that was presented at the evidentiary hearing establishes that Short suffered a work-related injury that caused his disability, and an opinion from a medical expert is not required to establish the causation element of Short’s claim.
¶ 49. The arguments Wilson’s presents in an attempt to refute Short’s claims that he suffered the work-related injury and that it caused his disability lack merit. First, while it is true that during some of Short’s doctor visits he reported that his pain began before the date of the desk-lifting incident,[16] that does not indicate, as Wilson’s contends, that Short made conflicting statements. Rather, it simply supports Short’s doctors’ recorded opinions that Short had a preexisting condition of cervical disk degeneration, and this Court has held that “when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines ■with the disease or infirmity to produce disability, the resulting disability is com-pensable.” Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 14 (Miss.1994). As the Court of Appeals noted:
... [Tjhere are multiple entries where Short told medical personnel that he experienced sudden pain after lifting the desk. A review of the medical records reveals that Short never gave any reason other than moving the desk for the sudden worsening of his pain, nor is there anything in the record that indicates that Short ever sought treatment for pain or weakness prior to the incident with the desk. It is imprudent to ignore multiple statements made to medical personnel for the purpose of seeking treatment because of statements about a prior pain or weakness.
Short, 37 So.3d at 60.
¶ 50. Wilson’s effort to show that Short’s disability was caused by an injury that had occurred outside the course of employment also fails. Wilson’s suggests that Short’s injury may have come about during Short’s personal time, while lifting heavy items he and his wife removed from storage units or while being dragged by a horse; however, these suggestions are purely speculative and unpersuasive. Short testified that he never worked stead *1260 ily cleaning out the storage units, and no witness testified that Short ever brought any large items from the storage units to work to sell, nor that they ever otherwise had seen Short in possession of large items from the storage units.[17] Furthermore, the incident with the horse occurred months after Short initially went to the emergency room and reported that he was experiencing pain after having lifted a heavy desk.
¶ 51. Wilson’s also highlights the fact that, following the desk incident up until Short left Wilson’s to have his surgical procedure, Short continued to perform his regular work duties well and seemed eager to work on the “kill floor,” where he earned more money.[18] As the Court of Appeals explained:
Short testified that he was taking pain medicine, and he did what he was told to do. At one point during his cross-examination when asked what tasks he performed, he stated: “I do whatever they tell me to do, sir. If they come tell me to go back there and hang some more sausage or whatever, I do what they tell me to do if I want my job.” He also testified that he would “work anywhere [he] c[ould] to make ... a dollar.”
Short, 37 So.3d at 60. Like the Court of Appeals, I refuse to penalize a person for persevering in order to earn a living, and, as the Court of Appeals noted, Short is not the first claimant who continued to work after having suffered a compensable injury. Id. (citing Frito-Lay, Inc. v. Leatherwood, 908 So.2d 175, 178 (Miss.Ct.App.2005); Bryan Foods, Inc. v. White, 913 So.2d 1003, 1006 (Miss.Ct.App.2005)).
¶ 52. Lastly, Wilson’s contention that Short never indicated that he suffered a work-related injury is incorrect. As the Court of Appeals explained:
... [U]ndisputed testimony shows that shortly after moving the desk, Short presented a medical excuse to Tammy Stowe [a member of the Wilson family who handles Wilson’s time and wage records, as well as workers’ compensation claims] that indicated he had been treated at the University Hospital and that he should not lift anything heavier than five pounds until cleared by neurosurgery. Also, other co-workers testified that Short complained of back pain and other ailments throughout the months preceding his surgery.... Short also testified that he told his supervisor, Welch, that he had experienced a “pop” in his neck as well as pain while moving the desk, and he complained off and on at work during the following eight months, until his surgery, that he had hurt his neck.
Short, 37 So.3d at 60-61. Welch also testified that at some time after the desk incident but before his surgery, he gave Jack Wilson, the owner of Wilson’s, a doctor’s *1261 excuse indicating that he could not lift more than five pounds.
¶ 53. For the foregoing reasons, I conclude that there was not substantial evidence to support the Commission’s finding that Short had failed to prove the elements of his workers’ compensation claim, and I therefore dissent. Accordingly, I would affirm the Court of Appeals’ decision to reverse the Circuit Court’s judgment, which affirmed the Commission’s decision, and I would remand the case to the Commission for a determination of the extent to which Short has suffered a loss of wage-earning capacity due to his disability.

. The medical records reflect, and it is undisputed that, when Short went to the emergency room on December 12, 2005 (shortly after the desk-lifting incident), he was diagnosed with disk herniation. As the AU’s Opinion stated: “The real question here is not whether Mr. Short has a cervical condition— he obviously does. The threshold issue is simply whether he was injured at work."

. This Court has also explained that, "[o]n the other hand, if the claimant is uncorroborated as to the occurrence of a claimed accident and is shown to have made statements inconsistent with the claim, the commission is not bound to accept the testimony as the basis for an award.” Penrod Drilling Co., 487 So.2d at 1333. In the instant case, however, Short did not make statements inconsistent with his claim.

. The injury suffered by the claimant in Westbrook was an injury in his lower back that he felt occur while he and a co-worker were lifting transite boards weighing from 175 to 200 pounds. Marley Constr. Co., Inc. v. Westbrook, 234 Miss. 710, 107 So.2d 104, 105 (1958). A few days following the incident, the claimant went to tire doctor. Id. In other words, the fact surrounding the work-related injury in Westbrook are similar to the facts in the instant case.

. As the Court of Appeals explained:
The medical records reflect an entry on July 3, 2006, which states that Short described symptoms of weakness, numbness, and tingling for a little over a year, and an entry in January 2006 that states he experienced pain for three months.
Short, 37 So.3d at 60. The medical records also reflect that on February 20, 2006, Short reported having experienced pain for two and a half years.

. Moreover, even if it were somehow established that Short was injured at some point prior to his first emergency room visit (on December 12, 2005) due to lifting an object from the storage units (or from anywhere, for that matter), it still would not disprove that he was injured on the job from lifting the desk. Additionally, as explained above, the fact that a claimant may have a preexisting condition or injury (from, for example, having lifted something heavy at some time prior to the work-related injury at issue) does not necessarily bar recovery under workers’ compensation law.

. Notably, it was another witness (Jones), not Short, who testified that Short liked working on the kill floor. Short explained the following in response to a question about him working on the kill floor despite his worsening pain: "When they tell me, Mr. Short, you've got to go on the kill floor if I wanted my job I had to do what they tell me to do.... If I didn't I’d get sent home or else I’d lose my job, so I had to go where they tell me to go-”